S05A0373. 105 FLOYD ROAD, INC. v. CRISP COUNTY.

(613 SE2d 632)

HUNSTEIN, Justice.

This case involves a constitutional challenge on vagueness grounds to the phrase "substantial business purpose" in the definition of "sexually-oriented adult use" contained in Section 3.01.02 of the Crisp County Unified Land Development Code. That section defines a "sexually-oriented adult use" as "[a]ny establishment that, as a regular and substantial business purpose, offers services, . . . or materials in print or in any photographic or recorded media that [involve or depict certain defined sexually-explicit activities or anatomical areas], with the intent of providing sexual stimulation or gratification to the customer." Under the County's development code, establishments that meet the definition of a sexually-oriented adult use may only operate in certain designated zoning districts upon approval of a special use permit.

Appellant 105 Floyd Road, Inc. is a corporation that sells sexually-explicit materials and novelty items as well as other adult-themed but non-sexually-explicit materials. In Crisp County it transacts business under the trade name "Love Stuff." It purchased the leasehold and assets of a prior business, Love Stuff, L.L.C., after that business was denied a special use permit to operate a sexually-oriented adult use. Although this predecessor company dealt primarily in sexually-explicit materials and catered to a mostly male clientele, after appellant purchased the business it changed the inventory by dramatically reducing the amount of sexually-explicit material and proffering adult-themed but non-sexually-explicit material that catered to women and couples.

After appellant began operating its business without a special use permit, the County sought injunctive relief, asserting that appellant was required to have such a permit because it qualified as a sexually-oriented adult use due to its "substantial business purpose" of offering to sell sexually-explicit materials. At a hearing the trial court heard testimony from a County sheriff's department investigator who visited the store in the course of investigating possible charges against appellant for distributing obscene materials. See OCGA § 16-12-80 et seq. The investigator gave rough estimates regarding the amount of sexually-explicit inventory she observed and

the store space used to display that inventory; on cross-examination the investigator acknowledged that she made no measurements of the store's square footage, undertook no inventory of appellant's stock in trade and focused only on the sexually-explicit material because the obscenity charge, not appellant's "substantial business purpose," was the sole subject of her investigation.[1] The County's planning director, who enforces and administers the development code, testified that it was her job to determine whether an establishment is a sexually-oriented adult use and that she had no difficulty distinguishing appellant's business from "convenience stores in Crisp County [that] sell some Playboys and things like that" because "that's not a part of their regular business . . . that is not their [sic] substantial part of their business." The trial court also heard from Ross Winner, a principal in Love Stuff, L.L.C. now employed by the company that manages appellant's business, who testified that appellant had substantially reduced the sexually-explicit inventory of its predecessor business so it could operate without a special use permit; that the sexually-explicit inventory constituted 12 to 13 percent of appellant's stock-in-trade; that 700 feet of the 4,000 square foot building is devoted to sexually-explicit material; and that removal of the sexually-explicit material would irreparably harm appellant because it would mean that appellant "would not be able to offer a complete atmosphere for couples."

The trial court found that a "substantial business purpose" of appellant was to offer for sale sexually-explicit materials intended to provide sexual stimulation or gratification to the customer. After rejecting appellant's constitutional challenges to the development code, including the assertion that the language was unconstitutionally vague, both facially and as applied to appellant, the trial court permanently enjoined appellant from operating its business. This appeal ensued. For the reasons that follow, we reverse.

We recognize that a local government, such as the County here, may constitutionally regulate commercial establishments within its boundaries that offer sexually-explicit material by enacting content-neutral time, place and manner restrictions designed to advance a substantial government interest, where reasonable alternative avenues of communication remain available. See *City of Los Angeles v. Alameda Books, Inc.*, 535 U. S. 425 (122 SC 1728, 152 LE2d 670) (2002) (plurality opinion); *City of Renton v. Playtime Theatres*, 475 U. S. 41 (106 SC 925, 89 LE2d 29) (1986); *Young v. American Mini Theatres*, 427 U. S. 50 (96 SC 2440, 49 LE2d 310) (1976). However, we

---

[1] Likewise, inventory lists prepared by the investigator and other law enforcement officers focused on the sexually-explicit materials.

do not agree with the County that the ordinance here must be deemed constitutional because of the holdings in *Young* and *Renton*, supra. Those cases are distinguishable because the U. S. Supreme Court did not find it necessary to conduct a vagueness analysis of the language in the zoning ordinances under consideration.[2]

As the U. S. Supreme Court has stated,

[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

(Punctuation and footnotes omitted.) *Grayned v. City of Rockford*, 408 U. S. 104, 108-109 (II) (A) (92 SC 2294, 33 LE2d 222) (1972). See also *Botts v. State*, 278 Ga. 538 (604 SE2d 512) (2004); *Thelen v. State*, 272 Ga. 81 (526 SE2d 60) (2000).

The criteria to evaluate statutory language challenged on vagueness grounds is that of " 'flexibility and reasonable breadth' " rather than " 'meticulous specificity' " or "mathematical certainty." *Grayned*, supra, 408 U. S. at 110. See also *Wilson v. State*, 245 Ga. 49, 53 (262 SE2d 810) (1980). Statutory language "must strike a balance between

---

[2] Although research has uncovered *Pleasureland Museum v. Beutter*, 288 F3d 988 (7th Cir. 2002), a Seventh Circuit opinion citing *Young* and *Renton*, supra, that involved a vagueness challenge to comparable language ("significant or substantial portion of its interior business"), in light of the circuit court's summary rejection of the argument and lack of analysis to explain the applicability of these two U. S. Supreme Court cases, in which the relevant phrases were not even challenged, we are not persuaded that the Seventh Circuit reached the correct result. See *Wisconsin Vendors v. Lake County, Illinois*, 2003 U. S. Dist. LEXIS 2310 (N.D. Ill. 2003) (criticizing *Pleasureland* but recognizing it as controlling authority).

two potentially conflicting concerns: it must be specific enough to give fair warning of the prohibited conduct, yet must be sufficiently general to address the problem under varied circumstances and during changing times. [Cits.]" *Parrish v. Lamm*, 758 P2d 1356, 1368 (Colo. 1988). However, legislation "must be definite and certain to be valid, and when it is so vague and indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application, it violates the first essential of due process of law." *Anderson v. Atlanta Comm. for the Olympic Games, Inc.*, 273 Ga. 113, 114 (1) (a) (537 SE2d 345) (2000).

The County's development code defines sexually-oriented adult use based on an establishment's "substantial business purpose." That phrase is not further defined in the development code and the mere fact that regular English definitions exist for each word in the phrase does not immunize the ordinance from a vagueness challenge. See generally *Botts*, supra, 278 Ga. at 540. Contrary to appellant's argument, it is not the use of the word "substantial" by itself, without reference to some legislatively determined percentage amount, that renders the definition here vague. Numerous courts have upheld statutory language against vagueness challenges where "substantial" has modified matters such as stock in trade or interior business. E.g., *Z. J. Gifts D-2, LLC v. City of Aurora*, 93 P3d 633 (Colo. App. 2004) (rejecting vagueness challenge to "substantial portion of its stock in trade or interior floor space"); *Doctor John's, Inc. v. City of Roy*, 333 FSupp.2d 1168 (N.D. Utah 2004) (rejecting vagueness challenge to ordinance providing for classification of a commercial establishment based on whether it has "a significant or substantial portion of its stock-in trade or derives a significant or substantial portion of its revenues or devotes a significant or substantial portion of its interior business or advertising, or maintains a substantial section of its sales or display space to the sale or rental, for any form of consideration" because language subject to a narrowing construction); *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 FSupp. 803 (II) (A) (E.D. Mich. 1985) (rejecting vagueness challenge to "substantial or significant portion of its stock in trade, books, magazines, and other periodicals"). But the County's definition does not look to stock in trade, gross sales, floor space or some other readily quantifiable standard. It looks solely to the "purpose" of the business without providing any guidelines for those establishments seeking to operate within the County to enable them to determine what amount of "purpose" qualifies as "substantial." Excluding only the most extreme cases, i.e., where an establishment's sole or primary purpose

is to offer sexually-explicit material, the ordinance provides no guidelines to enable a reasonable person to determine at what point the offering of sexually-explicit material to the public becomes a *substantial* purpose of its business. Reasonable persons are left to guess at the meaning of this language and differ as to its application.[3] *Anderson*, supra, 273 Ga. at 114 (1).

Although by its express language the definition of "sexually-oriented adult use" in the development code focuses only on an establishment's business purpose in offering sexually-explicit material, as the case here demonstrates the County in reality focuses instead on the nature of the other, non-sexually-explicit materials offered by the establishment to determine whether it qualifies as a sexually-oriented adult use. The planning director's testimony before the trial court and the statements made by the County's attorney during oral argument before this Court reflect the actual content analysis performed by the County: according to the planning director, convenience stores that sell sexually-explicit material do not come within the definition because such material is not part of a convenience store's "regular" business; likewise, the County's attorney explained that the definition would not include a gas station merely because it offered a rack of sexually-explicit material because "a gas station is a gas station." In appellant's case, even though the other items available at the business did not fall within the category of sexually-explicit materials regulated by the County, the County nevertheless used the adult theme of this other material, particularly the fact that these items cater to the sexual interests or activities of adults, as the means to establish appellant's "substantial business purpose" in offering the regulated material. Conceivably, under the County's application of its development code, a gas station of comparable size offering the same amount of sexually-explicit materials as appellant would not come within the development code's definition because it is a gas station, first and foremost; whereas appellant, because it is an "adult" shop, could come within the definition even if it altered its inventory to include only one sexually-explicit item. The impermissible vagueness of the standard contained in Section 3.01.02 of the County's development code is responsible for the County's application of this content-based analysis of the other material

---

[3] We are not persuaded by the contrary result reached by the Commonwealth Court of Pennsylvania, which concluded that the phrase "principal purpose" "is readily discernible by a reasonable person using common sense," *Piatek v. Pulaski Township*, 828 A2d 1164, 1179 (Pa. Commw. 2003), by looking to another case rejecting a vagueness challenge to the language "substantial or significant portion of its stock or trade." *Golden Triangle News v. Corbett*, 689 A2d 974, 984 (Pa. Commw. 1997).

offered at an establishment as a means to determine its "substantial business purpose" for selling sexually-explicit material.[4]

This flawed analysis likewise undermines the County's argument that appellant lacks standing to challenge the ordinance. Although the County, citing to *Young*, supra, 427 U. S. at 58-59, asserts that the definition of sexually-oriented adult use in its development code is "unquestionably applicable" to appellant "even if there may be some uncertainty about the effect of the [definition] on other litigants," id., we reject that assertion because it is premised upon the County's consideration of the overall nature of appellant's store.

Accordingly, we conclude that the challenged definition "contains insufficient objective standards and guidelines to meet the requirements of due process. [Cits.]" *Jekyll Island-State Park Auth. v. Jekyll Island Citizens Assn.*, 266 Ga. 152, 153 (2) (464 SE2d 808) (1996). It fails to give fair notice to reasonable persons whether their establishments qualify as sexually-oriented adult uses, with the concomitant obligation to obtain a special use permit in order to operate legally in the designated zoning districts. Furthermore, the challenged definition provides no clear guidelines to the County employees charged with enforcing the development code and thus impermissibly delegates to them "basic policy matters . . . for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, supra, 408 U. S. at 109. The challenged definition is too vague to be enforced and is, therefore, unconstitutional under the due process clauses of the Georgia and United States constitutions.[5]

We are not criticizing the County's goal of regulating within its boundaries those establishments that seek to offer sexually-explicit

---

[4] The County's application of the definition to include consideration of materials that are not sexually explicit also raises the possibility that the definition is unconstitutionally overbroad. "An ordinance may be overbroad . . . because it lends itself to improper application by enforcement officials." (Footnote omitted.) Rathkopf, The Law of Zoning and Planning § 24:20, pp. 24-86, 24-89. See generally *Johnson v. State*, 264 Ga. 590 (1) (449 SE2d 94) (1994) (statute is unconstitutionally overbroad if it reaches a substantial amount of constitutionally protected conduct).

[5] We cannot agree with the County that the vagueness of the phrase "substantial business purpose" is subject to narrowing by this Court. While this Court has the authority to impose a narrow construction on legislation to avoid constitutional infirmities, see *Howard v. State*, 272 Ga. 242 (1) (527 SE2d 194) (2000), exercise of that authority here could at best eliminate only the overbreadth of the County's application of its definition. It could not, however, eliminate the vagueness in the challenged language. That is because notwithstanding those courts that have grafted percentages on the use of "substantial" when that word is used to modify quantifiable items, such as "stock in trade," see generally *Z.J. Gifts D-4, LLC v. City of Littleton*, 311 F3d 1220, 1229 (10th Cir. 2002), we cannot accommodate the County's request to impose a percentage here where it is not possible to calculate in mathematical terms the amount of

materials and services with the intent of providing sexual stimulation or gratification to customers. We are simply persuaded that a more clearly worded and narrowly drawn ordinance can achieve the County's legitimate objectives of maintaining and preserving the safety and quality of life of its residents while providing an ascertainable definition of "sexually-oriented adult use" for due process requirements.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 23, 2005.

*Begner & Begner, Alan I. Begner, Katie K. Wood, Sirkin, Pinales & Schwartz, H. Louis Sirkin,* for appellant.
*Jenkins & Olson, Peter R. Olson, Brandon L. Bowen,* for appellee.

"purpose" needed to qualify as "substantial" so as to define an establishment as a sexually-oriented adult use under the County's development code.