09-2950-cv
VIP of Berlin, LLC v. Town of Berlin

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued:  September 15, 2009      Decided: January 25, 2010)

Docket No. 09-2950-cv

_____

VIP OF BERLIN, LLC,

*Plaintiff-Appellee*,

v.

TOWN OF BERLIN AND DENISE MCNAIR, in her official capacity as Town Manager, Town of Berlin, CT,

*Defendants-Appellants*,

HERMAN MIDDLEBROOKS, JR., in his official capacity as Town Manager, Town of Berlin, CT,

*Defendant*.[1]

_____

Before: MINER, STRAUB, and WESLEY, *Circuit Judges*.

_____

Defendants-Appellants appeal from a July 2, 2009 opinion and order of the United States

District Court for the District of Connecticut (Stefan R. Underhill, *Judge*) preliminarily enjoining

---

[1]  The Clerk of Court is respectfully directed to amend the caption to conform to the listing above.

them from enforcing against Plaintiff-Appellee an ordinance that regulates the operation of sexually oriented businesses. In granting Plaintiff-Appellee's motion for a preliminary injunction, the District Court concluded that Plaintiff-Appellee had shown a clear likelihood of success on the merits of its claim that the ordinance's definition of an "adult oriented store" was unconstitutionally vague as applied to Plaintiff-Appellee. The preliminary injunction order of the District Court is hereby VACATED and the case is REMANDED for further proceedings consistent with this opinion.

Judge MINER dissents in a separate opinion.

_____

JENNIFER M. KINSLEY, Sirkin Pinales & Schwartz LLP, Cincinnati, OH (Daniel A. Silver, Silver & Silver LLP, New Britain, CT, *on the brief*), *for Plaintiff-Appellee*.

THOMAS R. GERARDE (Katherine E. Rule, *on the brief*), Howd & Ludorf, LLC, Hartford, CT, *for Defendants-Appellants*.

JANE R. ROSENBERG, Assistant Attorney General (Richard Blumenthal, Attorney General for the State of Connecticut, *on the brief*) Connecticut Attorney General's Office, Hartford, CT, *for Amicus Curiae State of Connecticut*.

_____

STRAUB, *Circuit Judge*:

Defendants-Appellants Town of Berlin ("Berlin") and Denise McNair appeal from a July 2, 2009 opinion and order of the United States District Court for the District of Connecticut (Stefan R. Underhill, *Judge*) preliminarily enjoining them from enforcing Section 14-242 of the Berlin Code of Ordinances against Plaintiff-Appellee VIP of Berlin, LLC ("VIP"). The District Court granted the injunction at issue here because it concluded that VIP had shown a clear likelihood of success on the merits of its claim that the ordinance's definition of an "adult

2

oriented store" was unconstitutionally vague as applied to a zoning application that VIP submitted on March 26, 2009.

Berlin's ordinance defines any establishment having "a substantial or significant portion of its stock in trade in *Adult Books*, *Adult Videos* or *Adult Novelties*" as an "adult oriented store." Berlin Code of Ordinances § 14-242 (emphases in original). The District Court did not find the ordinance's definitions of "Adult Books, Adult Videos or Adult Novelties" unconstitutionally vague. Rather, the District Court held that VIP had shown a clear likelihood of success on the merits of its claim that the phrase "substantial or significant portion of its stock in trade" was unconstitutionally vague. In sum, the District Court concluded that the ordinance, as applied to VIP's March 2009 zoning application, failed to provide clear enforcement standards and adequate notice that the amount of VIP's proposed adult inventory would qualify VIP as an adult oriented store. The issue before us, therefore, is whether, as applied to VIP's March 2009 zoning application, the phrase "substantial or significant portion" of a business's stock in trade is unconstitutionally vague. For the reasons set forth below, we hold that the District Court exceeded its allowable discretion by concluding that VIP has shown a clear likelihood of success on the merits of its claim that this phrase, as applied toVIP's March 2009 zoning application, is unconstitutionally vague.

## FACTUAL AND PROCEDURAL BACKGROUND

VIP owns an approximately 15,000 square-foot commercial building located at 717 Berlin Turnpike in Berlin, Connecticut. The property is presently zoned for retail use. Because the property is located within 250 feet of a residentially zoned area, however, VIP may not

operate a retail store at that location if it is classified as an "Adult Oriented Store" under Berlin's sexually oriented business ("SOB") ordinance.

**I.      Berlin's Current Ordinance and VIP's March 2009 Zoning Application**

Berlin's current SOB ordinance defines an "Adult Oriented Store" as any establishment having "a substantial or significant portion of its stock in trade in *Adult Books*, *Adult Videos* or *Adult Novelties* or any combination thereof." Berlin Code of Ordinances § 14-242 (emphases in original). An adult oriented store falls into the category of a "Sexually oriented business," which requires an SOB license to operate in Berlin and which may not be located within 250 feet of any residentially zoned land. *Id.* §§ 14-242, 14-291(c). The stated purpose of Berlin's SOB ordinance is to:

> promote the health, safety and general welfare of the residents of the town and[,] reduce or eliminate the adverse secondary effects of such sexually oriented businesses, protect residents from increased crime, preserve the quality of life, preserve the property values and the character of surrounding neighborhoods and businesses, deter the spread of blight, and protect against the threat to public health from the spread of communicable and social diseases.

*Id.* § 14-241(6).

On March 26, 2009, VIP submitted an application for a zoning permit, along with a proposed inventory list and proposed floor plan. According to this March 2009 application, twelve percent of the stock in trade at VIP's Berlin store would consist of books, magazines, DVDs, and novelties or products that could be defined as "adult videos," "adult books," or "adult novelties" (collectively, "adult" products) under the Berlin SOB ordinance.[2] Of VIP's total

---

[2] As noted earlier, whether the definitions of these "adult" items are unconstitutionally vague is not before us because the District Court's decision to enjoin enforcement of the

inventory of 67,237 products, VIP represented that 8,242 of those items could be classified as adult products such as DVDs for rent, DVDs for sale, magazines, "sex positive lubricants," and "sex positive toys."

On May 11, 2009, Berlin's Chief Zoning Enforcement Officer, Hellyn R. Riggins, denied VIP's zoning application on the ground that the Berlin Town Manager, Denise M. McNair, had determined that VIP's proposed use would require an SOB license, which VIP lacked.

**II.    VIP's Prior Zoning Applications and Berlin's Prior Ordinance**

Although the District Court determined only that Berlin's current ordinance is unconstitutionally vague as applied to VIP's March 2009 zoning application, the District Court considered the parties' prior dealings in making that determination. Before submitting the March

---

ordinance was not grounded on such a basis and no party in this appeal has presented arguments relating to these definitions. However, for ease of reference and completeness, these definitions are included here.

Berlin's SOB ordinance defines "Adult Videos" as "films, motion pictures, videocassettes, DVDs, software, slides or other pornographic reproductions that depict, display or describe specified anatomical areas or specified sexual activities" as those areas and activities are defined by the Berlin Code. Berlin Code of Ordinances § 14-242.

Berlin's SOB ordinance defines "Adult Books" as "any books, magazines, periodicals, pamphlets, or other printed materials that depict, display or describe specified anatomical areas or specified sexual activities" as those areas and activities are defined by the Berlin Code. *Id.*

Berlin's definition of "Adult Novelties" includes "oils, lotions, gels or creams that are designed for or marketed primarily for use upon specified anatomical areas and intended for stimulating human genital organs, sexual arousal or as an aid to enhace or promote specified sexual activities." *Id.* Furthermore, the term "Adult Novelties" includes "instruments, devices, toys, or paraphernalia that are designed for or marketed primarily for stimulating human genital organs, sexual arousal or sadomasochistic use" and "instruments, devices, gag gifts, toys or paraphernalia that depict, display or are shaped in the form of specified anatomical areas." *Id.*

5

2009 zoning application that is at issue here, VIP previously had applied for a certificate of zoning compliance, in an application dated July 25, 2006, seeking to open an "Adult Bookstore[,] including books, magazines, videos, clothing, novelties—no on-site presentation of any materials sold." In a letter accompanying this application, VIP stated that "less than a majority of its stock and trade" would consist of items of an "adult" nature. Under Berlin's SOB ordinance in place at the time of VIP's first zoning application, the definition of an "Adult Bookstore" or "Adult Video Store" was an establishment having a "majority of its stock and trade" in adult books, magazines, videos, and the like. The ordinance additionally defined an "Adult Novelty Store" as "any establishment having a substantial or significant portion of its stock and trade" in adult novelty products. Berlin's zoning officer denied VIP's July 2006 application on the ground that VIP was an SOB and did not have the appropriate license. VIP's subsequent appeal to the Berlin Board of Zoning Appeals was denied.

In the meantime, on October 5, 2006, the Berlin Town Council amended its SOB licensing ordinance to create a single category of business known as an "Adult Oriented Store," which is defined as any establishment having "a substantial or significant portion of its stock in trade in *Adult Books*, *Adult Videos* or *Adult Novelties* or any combination thereof." Berlin Code of Ordinances § 14-242 (emphases in original). It is the language in this version of the ordinance that the District Court held unconstitutionally vague and that is before us on appeal.

After Berlin rejected VIP's July 2006 application and amended its ordinance, VIP filed a new application for a zoning permit on March 30, 2007, along with a proposed inventory list, representing that *none* of its proposed items for sale could be construed as "adult use," including

6

"adult novelty" or "adult video" as defined in the Berlin SOB ordinance. Berlin's Chief Zoning Enforcement Officer, Hellyn R. Riggins, apparently disagreed with VIP's characterization of its inventory. In response to VIP's March 2007 application, Riggins stated: "I have carefully reviewed the list of items that you propose to sell [and have] personally viewed these items at your other locations in the state." Riggins concluded that "[a] significant or substantial portion of these items constitute adult novelties under the current definitions found in our [SOB] Ordinance."

In June 2007, VIP resubmitted its zoning application with a revised inventory list that eliminated some of the items that were of concern to the town zoning officer. After submitting that application, the zoning officer indicated orally to VIP's principal, Dominick DeMartino, that she intended to deny that application for the same reason that she denied the March 30 application. As a result, VIP withdrew its June 6 zoning application on June 8, 2007.

### III. District Court Proceedings and Decision

In November 2006, after its first zoning application was denied, VIP brought an action in the District Court pursuant to 42 U.S.C. § 1983, alleging that Berlin's SOB zoning ordinance was unconstitutional. Subsequently, after its March 2009 zoning application was also denied, VIP sought a preliminary injunction to enjoin defendants from enforcing Berlin's SOB ordinance against VIP. In support of its motion for a preliminary injunction, VIP argued that the Berlin ordinance's definition of an SOB—an establishment with "a substantial or significant portion of its stock in trade" in adult merchandise—is vague as applied to VIP's March 2009 application because it does not provide sufficiently clear notice or guidance about what portion of

7

merchandise would allow VIP to operate as a non-SOB.

On June 23, 2009, the District Court heard oral argument, as well as testimony from DeMartino and McNair. DeMartino, VIP's principal, testified that he eventually wishes to open an adult store in Berlin pending the outcome of another segment of this litigation. However, he testified that currently he is attempting to comply with the SOB ordinance and does not understand what he needs to do to avoid being classified as an SOB under the ordinance. McNair, Berlin's town manager, testified that she reviews zoning applications "on an individual basis" and that, in her view, the phrase "substantial or significant" means "meaningful to either the business or the Town of Berlin . . . . It would have import to the business." When asked why she denied VIP's March 2009 zoning application, McNair stated, "By the list that I saw, there were over 8,000 items that the applicant had said were adult products . . . . which to me is substantial." McNair stated, "'Portion' to me means an amount. A portion of something is an amount, a part of something." McNair further stated that "[t]he ordinance, in the way I'm asked to apply it, is to assist in the goals of the town, the security of its people, the health, welfare, and I believe it's necessary to look at the cases individually, not be arbitrary but to really understand and take a look at each application as applied."

On July 2, 2009, the District Court granted VIP's motion for a preliminary injunction.[3] *See VIP of Berlin, LLC v. Town of Berlin*, 644 F. Supp. 2d 151 (D. Conn. 2009). Specifically, the District Court concluded that VIP showed (1) that it will suffer irreparable harm in the

---

[3] On July 30, 2009, a three-judge panel of our court stayed the District Court's order pending appeal. *See* Dkt. No. 09-2950-cv, Order of July 30, 2009.

8

absence of an injunction because it is being prohibited from exercising its First Amendment rights and (2) a clear or substantial likelihood of success on its claim that the Berlin ordinance's definition of an SOB is unconstitutionally vague as applied to VIP's March 2009 zoning application. With regard to the likelihood of success on the merits, the District Court reasoned that "the statute does not give the person of ordinary intelligence a reasonable opportunity to know what portion of stock in trade would not qualify as substantial or significant or provide explicit standards for those who apply it."

## DISCUSSION

We review a district court's decision to grant or withhold a preliminary injunction for abuse of discretion. *Vincenty v. Bloomberg*, 476 F.3d 74, 83 (2d Cir. 2007). A district court exceeds its allowable discretion if its decision "rests on an error of law" or a "clearly erroneous factual finding," or if its decision "cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted). "The ultimate question . . . remains whether, in light of the applicable standard, the court has abused its discretion; and '[i]f the underlying constitutional question is close, therefore, we should uphold the injunction.'"[4] *Id.* (quoting *Ashcroft*, 542 U.S. at 664). Where a party seeks a preliminary injunction that challenges "government action taken

[4] At least one of our prior cases has suggested that, in reviewing a district court's grant of a preliminary injunction, "the constitutionality of a statute is a legal question subject to de novo review." *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 176 (2d Cir. 2006) (internal quotation marks omitted). This standard of review, however, is inconsistent with the Supreme Court's instruction in *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 664 (2004) that "we should uphold the injunction" where "the underlying constitutional question is close." In any event, we vacate the preliminary injunction here because the constitutional question at issue is *not* close and because the District Court's decision cannot be located within the range of permissible decisions.

9

in the public interest pursuant to a statutory or regulatory scheme" and that would "alter, rather than maintain, the status quo," the moving party must demonstrate irreparable harm and a "clear" or "substantial" likelihood of success on the merits. *Jolly v. Coughlin*, 76 F.3d 468, 473-74 (2d Cir. 1996) (internal quotation marks omitted). For the reasons set forth below, the District Court exceeded its allowable discretion when it held that VIP demonstrated a clear likelihood of success on the merits of its as applied vagueness challenge.

## I. Vagueness Doctrine

"As one of the most fundamental protections of the Due Process Clause, the void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (internal citations and quotation marks omitted). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

In reviewing a statute's language for vagueness, "we are relegated . . . to the words of the ordinance itself, to the interpretations the court below has given to analogous statutes, and perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (internal quotation marks and footnotes omitted). "The degree of vagueness tolerated in a statute varies with its type:

10

economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all." *Rubin v. Garvin*, 544 F.3d 461, 467 (2d Cir. 2008). When a statute "is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts."[5] *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (internal quotation marks omitted).

### A. Berlin's SOB Ordinance Survives an "As Applied" Vagueness Challenge

#### 1. Notice

The first way that a law may be unconstitutionally vague as applied to the conduct of certain individuals is "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill*, 530 U.S. at 732. "Animating this first vagueness ground is the constitutional principle that individuals should receive fair notice or warning when the state has prohibited specific behavior or acts." *Thibodeau*, 486 F.3d at 65.

---

[5] Where "the only vagueness in the ordinances relates to the amount of sexually explicit activity that may be portrayed before the material can be said to" fall within the scope of the ordinances, the Supreme Court has expressed skepticism about whether such ordinances have a "significant deterrent effect on . . . First Amendment" rights. *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60-61 (1976) (rejecting a facial vagueness challenge to a zoning ordinance's regulation of adult theaters); *see also id.* at 70 ("[T]hough we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate . . . ."). Accordingly, because the only vagueness challenge here relates to the ordinance's definition of how much "adult" merchandise makes a store "adult oriented," the degree of vagueness tolerated in this situation, although slightly unclear from existing case law, may be somewhat greater than if the ordinance regulated other types of more protected speech. Nevertheless, even if the expression at issue here were entitled to full First Amendment protection, the present ordinance's language is sufficiently specific to withstand VIP's as-applied vagueness challenge.

11

The relevant inquiry is "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Rubin*, 544 F.3d at 467 (internal quotation marks and citations omitted). "Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned*, 408 U.S. at 110; *see also id.* at 106, 109-10 (rejecting a facial vagueness challenge to an ordinance that implicated First Amendment rights and prohibited certain demonstrations "adjacent" to schools that "disturb[] or tend[] to disturb the peace or good order of such school session or class thereof . . . "). For this reason, we respectfully disagree with the dissent that it is constitutionally problematic that McNair testified that "she 'was unable to supply a mathematical definition'" or a percentage to quantify the cutoff point for the amount of adult materials in a store's stock in trade that would qualify it as an SOB. *See* Dissent, *infra*, at **[3-4]**. And, in any event, although the zoning officer's understanding of the ordinance's terms is relevant "perhaps to some degree," *Grayned*, 408 U.S. at 110, our inquiry begins with the text of the ordinance.

In the present case, Berlin's ordinance defines a sexually oriented business, or SOB, as an establishment that has a "substantial or significant portion" of its stock in trade in adult merchandise. VIP asserts that this definition is so vague that it fails to provide VIP with notice that its proposed inventory of 8,242 adult items—approximately twelve percent of its total inventory of 67,237 items—would qualify it as an SOB. VIP further argues that, because the statute uses the words "substantial or significant portion," it would be inappropriate to look at the absolute number of adult items being sold, as opposed to the proportion of the store that is adult-oriented, when determining whether a business is an SOB. Such a reading, however, ignores the

common, ordinary meaning of the ordinance's words. *See generally Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). One of the common definitions of the term "substantial" is "of ample or considerable amount [or] quantity." 15 OXFORD ENGLISH DICTIONARY 67 (2d ed. 1989); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 2280 (1993) (defining substantial as "considerable in amount"). Similarly, one common definition of the term "significant" is "of a noticeably or measurably large amount." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/significant (last visited Jan. 22, 2010); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 2116 (1993) (defining significant as "important, weighty, notable"). "Portion" simply means a "part" of something. WEBSTER'S THIRD NEW INT'L DICTIONARY 1768 (1993). Applying these definitions to the present case, VIP's proposed 8,242-item adult section clearly falls under the ordinance because the "part" of its stock in trade devoted to adult merchandise is of "considerable quantity" and "of a noticeably or measurably large amount."[6]

---

[6] In addition to the plain meaning of the phrase, upon analyzing the phrase's application in other legislative contexts, it is clear that "substantial or significant portion of its stock in trade" should be considered in light of the absolute number of items offered for sale, not just the percentage of items offered for sale. In enacting 47 U.S.C. § 941, for example, Congress found that "a *significant portion* of all material available on the Internet is related to pornography," Pub. L. No. 107-317, 116 Stat. 2766, 2766 (2002) (emphasis added), even though it has been said that only "[a] little more than 1 percent of all [searchable] Web pages (amounting to approximately 275 million to 700 million Web pages) are sexually explicit," *Am. Civil Liberties Union v. Gonzales*, 478 F. Supp. 2d 775, 788 (E.D. Pa. 2007) (finding the phrase "harmful to minors" in 47 U.S.C. § 231 unconstitutionally vague). Because only one percent of web pages are sexually explicit, but the *absolute number* of sexually explicit web pages reaches into the millions, Congress's finding that a "significant portion" of the internet is sexually explicit likely contemplated the absolute amount, not just the percentage, of sexually explicit material available

Congress has used similar phrasing in many other statutory contexts, including various portions of the patent laws, securities laws, environmental laws, and civil rights laws.[7] The 1964 Civil Rights Act, for example, applies to a business if, *inter alia*, "a *substantial portion* of the food which it serves . . . has moved in commerce." 42 U.S.C. § 2000a(c) (emphasis added). Despite repeated attacks on the Civil Rights Act's validity under the Commerce Clause, it appears that no litigant ever thought to challenge the phrase "*substantial portion* of the food which it serves" as unconstitutionally vague. Although these statutes do not regulate First Amendment activity, and are thus subject to a lower required level of specificity in the face of a vagueness challenge, it is nonetheless worth noting that the legislature has used the phrase "substantial portion" to organize our society in a wide variety of contexts.

In addition to the plain meaning of the ordinance's wording, which has been used in a

---

on the internet.

[7] The phrase "substantial portion" appears in the following categories of federal statutes: Banks and Banking, 12 U.S.C. § 1749aaa-5(3); Civil Rights Act of 1964, 42 U.S.C. § 2000a(c); Crimes and Criminal Procedure, Federally Protected Activities, 18 U.S.C. § 245(b)(3); Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1107(e)(1)(B), (C) and 1403(b)(2); Endangered Species Act Amendments of 1982, 16 U.S.C. § 1539(b)(2)(B); Farm Housing, 42 U.S.C. § 1484(f)(3); Foreign Relations and Intercourse, 22 U.S.C. §§ 3651(2) and 3984(a); Housing of Persons Engaged in National Defense, 42 U.S.C. § 1581(d)(4); Internal Revenue Code, 26 U.S.C. §§ 280G(b)(2)(A)(ii)(II), 4252(b)(2), 7507(a), 7701(a)(36)(A); Investment Companies, 15 U.S.C. §§ 80a-2(a)(5) and 80b-2(a)(2); Judiciary and Judicial Procedure, 28 U.S.C. §§ 456(d), (e) and 460(b); Navigation and Navigable Waters, 33 U.S.C. § 1286(f)(1); Newspaper Preservation Act, 15 U.S.C. § 1802(4); Petroleum Marketing Practices, 15 U.S.C. § 2821(11); Public Health Service, 42 U.S.C. § 300e-1(4)(C); Public Works Acceleration Program, 42 U.S.C. § 2642(f)(3); Securities Exchanges, 15 U.S.C. § 78c(a)(6); Student Assistance, 20 U.S.C. § 1087-2(q)(2)(A); Water Resources, 42 U.S.C. § 1962d-14a(g)(1), (h). *See also United States v. Clark*, 912 F.2d 1087 (9th Cir. 1990) (finding that "substantial portion" as used in the Marine Mammal Protection Act, 16 U.S.C. § 1361, *et seq.*, was not unconstitutionally vague).

wide variety of statutory contexts, the ordinance's stated purpose—preventing the adverse secondary effects associated with the presence of SOB's—provides additional clarity and guidance. *See Grayned*, 408 U.S. at 112 (noting that "[a]lthough the prohibited quantum of disturbance is *not specified in the ordinance*, it is apparent from the statute's *announced purpose* that the measure is whether normal school activity has been or is about to be disrupted" (emphases added)). Given the ordinance's stated purpose, as well as the plain meaning of the ordinance's words, the phrase "substantial or significant portion" clearly encompasses not only the percentage of adult items sold, but also the absolute number of adult items sold. It would make little sense to allow this store with an 8,242-item adult section to operate as a non-SOB when a similarly located 8,242-item store devoted solely to adult merchandise would be required to obtain an SOB license and locate itself elsewhere. The neighborhood is no less likely to experience detrimental effects if the 8,242 adult items were sold through a small stand-alone business rather than through a large store's "adult" department equally substantial in size.

Despite the ordinance's plain meaning and stated purpose, the District Court agreed with VIP that the ordinance was impermissibly vague. Specifically, the District Court noted that the "language 'substantial or significant portion of its stock in trade' suggests that a retail establishment could have something more than zero percent adult media and adult products without being classified as an 'adult oriented store.'" *VIP of Berlin, LLC v. Town of Berlin*, 644 F. Supp. 2d 151, 162 (D. Conn. 2009). The District Court concluded that "it is not readily apparent from the face of the ordinance what amount of stock in trade would qualify as a substantial or significant portion." *Id.* We have previously noted that, "[t]he evaluation of

15

whether [a statute] . . . is vague as applied to [a litigant] must be made with respect to [the litigant's] actual conduct and not with respect to hypothetical situations at the periphery of the [statute's] scope." *Perez v. Hoblock*, 368 F.3d 166, 175 (2d Cir. 2004); *see also Rubin v. Garvin*, 544 F.3d 461, 468 (2d Cir. 2008) ("Because we must examine the complainant's conduct before analyzing other hypothetical applications of the law, we turn first to his as-applied challenge." (internal quotation marks and citation omitted)). To be clear, a court may analyze whether a reasonable person would understand that the litigant's conduct was prohibited. *See Hill*, 530 U.S. at 732. However, in the context of an as-applied vagueness challenge, a court's analysis should be confined to the litigant's *actual* conduct, and a court should not analyze whether a reasonable person would understand that certain hypothetical conduct or situations violate the statute. *See Perez*, 368 F.3d at 175; *see also Farrell*, 449 F.3d at 494.

Here, although its decision related only to VIP's as-applied vagueness challenge, the language and logic of the District Court at times slipped into hypothetical analysis, questioning where in general the line between adult and non-adult businesses is drawn. The pertinent issue, however, is not whether a reasonable person would know what amount of adult merchandise, in general, would qualify a business as adult oriented. Rather, the issue in this particular as-applied challenge is whether a reasonable person would know that a proposed inventory of 8,242 adult items would qualify VIP as an adult oriented store. Whether or not the ordinance provides a bright line rule about the specific amount of adult media that would qualify a store as "adult oriented" in hypothetical applications, there is no doubt that, *as applied to VIP*, the language of

16

the SOB ordinance covers VIP's March 2009 zoning application.[8] As noted earlier, the *portion of VIP's proposed retail establishment that would be devoted to adult merchandise*—8,242 items—is so *substantial* that it potentially eclipses the size of a free-standing store whose sole purpose is to provide adult merchandise. One could analogize VIP to a department store, such as Macy's, whose individual shoe department is so large that it exceeds the size of many stand-alone shoe stores. Even if Macy's shoe department constituted only twelve percent of Macy's total stock in trade, one would hardly call it an insubstantial or insignificant portion of the Macy's store. Accordingly, even if there were a hypothetical situation that would fall under the ordinance's "gray" area, the ordinance is sufficiently clear to provide *VIP* with notice that the proposed inventory in its March 2009 zoning application qualifies it as an SOB.[9]

---

[8] The District Court expressly considered VIP's vagueness challenge "as applied to VIP's present business plan, which was submitted to Berlin's zoning enforcement officer on March 26, 2009" and did not hold that the ordinance was vague as applied to VIP's previous zoning applications. Given that the District Court's decision addressed VIP's vagueness challenge as applied to VIP's March 2009 zoning application, VIP's prior zoning applications are of limited relevance. VIP's first zoning application was denied in 2006 pursuant to an ordinance whose wording differs from the present ordinance's language. Furthermore, VIP explicitly stated in that 2006 application that it intended to operate as an "Adult Bookstore." In addition, the denial of VIP's March 2007 zoning application appeared to center, in part, around a dispute about whether certain items were adult or not. *See supra* [**p. 7**]. The District Court's decision was not based on a finding that the ordinance's definitions of "adult" merchandise were vague or overbroad and, therefore, those issues are not before us.

[9] In addition, even if the District Court had been correct to engage in some facial analysis, it is not clear that its conclusion from that analysis is correct, as the majority of courts that have considered a facial challenge to similar language have reached the opposite conclusion. *See, e.g.*, *Ill. One News, Inc. v. City of Marshall*, 477 F.3d 461, 465 (7th Cir. 2007) (finding that the definition of "adult bookstore" as "[a]n establishment having a substantial or significant portion of its stock in trade" in adult merchandise was not facially vague and noting that "[i]t is all but impossible to write a law or regulation without some qualitative words such as 'substantial'"); *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157, 1160 (10th Cir. 2006)

In addition to slipping into hypothetical analysis in the midst of determining whether the ordinance was vague as applied to VIP's March 2009 zoning application, the District Court relied on several inapposite cases in reaching its conclusion. In particular, of the three state supreme court cases relied upon by the District Court, two involved language different from the language at issue here. In *105 Floyd Road, Inc. v. Crisp County*, 613 S.E.2d 632, 634 (Ga. 2005), the issue was whether the phrase "substantial business *purpose*" was unconstitutionally vague. The court noted that "[n]umerous courts have upheld statutory language against vagueness challenges where 'substantial' has modified matters such as *stock in trade* or interior business." *Id.* at 634-35 (emphasis added). Specifically distinguishing those decisions, the court then found the phrase "substantial business *purpose*" unconstitutionally vague because it "does not look to *stock in trade*, gross sales, floor space or some other readily quantifiable standard." *Id.* at 635 (emphases

(noting that to prevail on a facial vagueness challenge, a party "must show, at a minimum, that the challenged law would be vague in the vast majority of its applications" and that the phrase "'significant or substantial' portion of its wares devoted to adult material survives Dr. John's facial vagueness challenge"); *ILQ Invs., Inc. v. City of Rochester*, 25 F.3d 1413, 1419 (8th Cir. 1994); *511 Detroit St., Inc. v. Kelley*, 807 F.2d 1293, 1295-97 (6th Cir. 1986); *Mom N Pops, Inc. v. City of Charlotte*, 979 F. Supp. 372, 393-94 (W.D.N.C. 1997); *15192 Thirteen Mile Rd., Inc., v. City of Warren*, 626 F. Supp. 803, 819-21 (E.D. Mich. 1985); *City of Chi. v. Scandia Books, Inc.*, 430 N.E.2d 14, 18 (Ill. App. Ct. 1981) ("The word 'substantial' as used in the definition of adult bookstores is not so indefinite as to render the Ordinance void and unenforceable."); *Dandy Co., v. Civil City of South Bend, County-City Complex*, 401 N.E.2d 1380, 1386 (Ind. Ct. App. 1980) ("The definition[s] of [substantial or significant] must necessarily be determined on a case-by-case basis and are therefore not capable of precise mathematical calculation."); *Golden Triangle News, Inc. v. Corbett*, 689 A.2d 974, 984-85 (Pa. Commw. Ct. 1997) (rejecting the argument that the phrase "substantial or significant portion" is impermissibly vague under Pennsylvania's state constitution). *But see City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 652, 656 (Tenn. 2005) (holding the phrase "substantial or significant portion of its stock and trade" unconstitutionally vague and relying heavily on the fact that "the officers charged with enforcing the ordinance [are unable] to define its key terms").

18

added).  Similarly, the issue in *City of Columbia v. Pic-A-Flick Video, Inc.*, 531 S.E.2d 518, 522-23 (S.C. 2000) was whether the phrase "principal business *purpose*" was unconstitutionally vague.  Because the language at issue here is "substantial or significant portion of its stock in trade," these two state supreme court cases are of limited applicability.  Furthermore, one of the primary federal cases relied upon by the District Court, *Wisconsin Vendors, Inc. v. Lake County*, 152 F. Supp. 2d 1087, 1094-95 (N.D. Ill. 2001) ("*Wisconsin Vendors I*"), is also of limited persuasive value.  *See id.* (finding that plaintiff had shown a likelihood of success on the merits of its as-applied and facial vagueness challenge to the phrase "substantial or significant portion of its business").  Shortly after *Wisconsin Vendors I* was issued, the Seventh Circuit held in *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 996-97 (7th Cir. 2002), that the language "significant or substantial portion of its stock-in-trade" was not unconstitutionally overbroad on its face.  After the Seventh Circuit decided *Pleasureland*, the same District Court that decided *Wisconsin Vendors I* issued a new decision that rejected plaintiff's facial and as-applied vagueness challenges "[i]n light of *Pleasureland*."  *Wisconsin Vendors, Inc. v. Lake County*, No. 99 C 8340, 2003 WL 366580, at *4 (N.D. Ill. Feb. 19, 2003).

In sum, the plain meaning and stated purpose of Berlin's ordinance, as applied to VIP's March 2009 zoning application, provide adequate notice that the size of VIP's proposed inventory would qualify it as an "adult-oriented" store under the ordinance.  In concluding to the contrary, the District Court's decision at times slipped into hypothetical analysis ill suited for analyzing an as-applied vagueness challenge and failed to consider that the plain meaning of the ordinance encompasses not only the percentage of adult inventory items, but also the absolute

19

number of adult inventory items.

## 2.    Sufficiently Clear Enforcement Standards

The second way in which a statute can be found unconstitutionally vague is if the statute does not "provide explicit standards for those who apply [it]." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (internal quotation marks omitted).  When analyzing this issue, a court may determine that a statute provides adequate guidance if either:  (1) the "statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement;" or (2) "even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006).

For the same reasons that it gave VIP adequate notice regarding its March 2009 application, the language here, which defines an SOB as an establishment that has a "substantial or significant portion" of its stock in trade in adult merchandise, does not encourage or authorize arbitrary enforcement.  The plain meaning of the ordinance, as discussed earlier, is not vague and clearly applies to VIP because the adult merchandise portion of VIP's proposed retail establishment is so substantial that it potentially exceeds the size of some stand-alone stores.

In addition to a statute's plain meaning and stated purpose, courts should determine whether a statute provides sufficiently clear enforcement standards by analyzing "perhaps to some degree . . . the interpretation of the statute given by those charged with enforcing it." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).  In the present case, McNair, Berlin's

town manager, testified that she reviews zoning applications "on an individual basis" and that, in her view, the phrase "substantial or significant" means "meaningful to either the business or the Town of Berlin . . . . It would have import to the business." When asked why she denied VIP's March 2009 zoning application, McNair stated, "By the list that I saw, there were over 8,000 items that the applicant had said were adult products . . . . which to me is substantial." McNair stated, "'Portion' to me means an amount. A portion of something is an amount, a part of something." McNair further stated that "[t]he ordinance, in the way I'm asked to apply it, is to assist in the goals of the town, the security of its people, the health, welfare, and I believe it's necessary to look at the cases individually, not be arbitrary but to really understand and take a look at each application as applied." McNair's testimony is consistent with the stated purpose and plain meaning of the ordinance as described earlier in this opinion. McNair's statement that she reviews zoning applications "on an individual basis" and that the ordinance's terms do not necessarily trigger a specific percentage of stock in trade or a specific absolute number of trade items does not alter that conclusion. *See Grayned*, 408 U.S. at 114 (noting that "enforcement requires the exercise of some degree of . . . judgment").

Furthermore, even if, as the dissent asserts, Berlin's ordinance did not provide sufficiently clear enforcement standards, VIP's as-applied vagueness challenge still fails. As noted earlier, even if a statute does not include clear enforcement standards, it may still survive a void-for-vagueness challenge if the "conduct at issue falls within the core of the statute's prohibition." *Farrell*, 449 F.3d at 494. In *Farrell*, a convicted sex offender challenged a condition of his supervised release that prohibited him from possessing "pornography," arguing that the term

21

pornography was unconstitutionally vague on its face and as applied to him. Although we did "not disagree with Farrell's argument that the term 'pornography' is inherently vague," and "[a]lthough the actors in Farrell's case had divergent views on what constituted 'pornography' and why," *id.* at 490, we nevertheless rejected Farrell's vagueness challenge, *id.* at 492. We reasoned that "[w]hether or not the term 'pornography' is inherently vague," the items possessed by Farrell fit "within any reasonable understanding of the term," *id.* at 490, and "[n]o reasonable officer could have doubted that Farrell's possession . . . violated the terms of his parole agreement," *id.* at 494.

Here, because the portion of VIP's business devoted to adult merchandise is so substantial, VIP's proposed retail establishment falls under the "core" of the ordinance's prohibition. For the reasons discussed above, VIP's proposed 8,242-item adult inventory, which constitutes twelve percent of its stock in trade, falls "within any reasonable understanding of the [ordinance's language]."[10] *Id.* at 490. Accordingly, even if the ordinance did not provide clear

_____

[10] One might argue that VIP's March 2007 application does not fall under the "core" of Berlin's ordinance because VIP represented in that application that zero percent of its inventory would be adult merchandise. However, from the record it seems to be an open question whether or not the inventory was actually zero percent adult. Riggins, one of Berlin's officals, certainly disagreed with the way that VIP had characterized its inventory. Furthermore, and more importantly, it is VIP's March 2009 zoning application that is at issue here, and VIP represents in that application that more than 8,000 items of VIP's proposed inventory would constitute adult items. In this regard, we note that, when looking to whether Berlin's ordinance provided sufficiently clear enforcement standards, the testimony of VIP's principal that he did not "know what substantial or significant portion of stock in trade means in an actual number" is of only marginal value. *See* Dissent, *infra* at **[6]**. First, the First Amendment does not require that ordinances provide "mathematical certainty" when describing the conduct they prohibit. *See Grayned*, 408 U.S. at 110. Second, the more relevant question for DeMartino in this as-applied challenge is whether he knew that the proposed inventory in VIP's March 2009 application would cause the store to fall within the purview of Berlin's SOB ordinance. Objectively

22

enforcement standards, the decision to classify VIP as an SOB was not the result of "unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute." *Id.* at 494.

**CONCLUSION**

For the reasons stated above, the preliminary injunction order of the District Court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

---

speaking, the inquiry could yield only one reasonable answer: yes. Put another way, VIP's March 2009 application fit comfortably within the core of the ordinance's prohibition.

MINER, Circuit Judge, dissenting:

My dissent is prompted by my opinion that VIP is likely to succeed on its claim that Berlin's ordinance was unconstitutionally vague as applied to the zoning application that VIP submitted on March 26, 2009.

I accept the proposition that the phrase "substantial or significant portion of its stock in trade" is not unconstitutionally vague on its face. This is so because that phrase generally does not "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and because it does not "authorize[] or even encourage[] arbitrary and discriminatory enforcement." Hill v. Colorado, 530 U.S. 703, 732 (2000). The phrase may be unconstitutional as applied, however, because

> there may be instances where an adult bookstore would be unsure of whether its stock, floorspace, or revenue is made up of a "significant or substantial portion" of adult material, [and] there are myriad instances in which it would not. If, for example, Victoria's Secret sold a few copies of an adult magazine along with its regular stock of lingerie, it certainly would not wonder if the ordinance applied to it. Or, if the store chose to carry nothing but adult videos and toys, it would have no doubt that it was required to obtain an SOB [sexually oriented business] license to do so. In short, in many situations, "people of ordinary intelligence" would clearly understand whether or not the ordinance applied to them.

Doctor John's, Inc. v. City of Roy, 465 F.3d 1150, 1158 (10th Cir. 2006) (emphasis supplied). "Many" is not "all," and the situation at hand lies somewhere in between the examples given in

1

the quoted excerpt: VIP may have 8,000 "adult" items on hand, but that number represents but 12% of its stock in trade.

Continuing with its analysis of the facial validity of an ordinance similar to the one at hand, the Tenth Circuit opined:

> In the same way, in <u>many</u> cases the ordinance cannot be said to permit arbitrary enforcement. . . . There may be occasions where arbitrary enforcement might occur, but the standard given to officials satisfies this court that such a risk is not present to such a degree as to justify facial invalidation.

<u>Id.</u> (emphasis supplied).

This is a case in which a person of ordinary intelligence would not clearly understand whether the ordinance applied to him and where arbitrary enforcement has occurred, all due to the manner in which the decision-maker treated VIP's application. In examining the as-applied vagueness challenge before us, we are constrained to determine whether (1) the ordinance gives a reasonable opportunity to one of ordinary intelligence to know what is required; and (2) to consider whether the ordinance provides explicit standards that govern its application. <u>See</u> <u>Rubin v. Garvin</u>, 544 F.3d 461, 468 (2d Cir. 2008).

In applying the ordinance to VIP, the decision-maker, Denise McNair, Town Manager for the Town of Berlin, reworked the ordinance so as to provide her own "spin" to the phrase "substantial or significant portion of its stock in trade," resulting in a decision having no reference to the ordinance itself. Her testimony also demonstrated considerable confusion

2

about the meaning of the ordinance.  For example, she testified as follows:

> I think that substantial or significant means meaningful to someone, myself — or the Town of Berlin, I should say, not myself.  But meaningful to either the business or the Town of Berlin.  I think of a significant other.  I think I said that in my deposition.  When I hear these words, it's somebody who is meaningful to the other person it's not just a friend so it would have some meaning.  It would have import to the business.  It would have meaning to the town under the ordinance.

To Ms. McNair, "meaningful" entails a subjective judgment.  Indeed, it is a word that is vitalized only in the eye of the beholder.  The dictionary defines it as "having a meaning or purpose: capable of being understood or interpreted: requiring or done with understanding and intent."  WEBSTER'S THIRD NEW INT'L DICTIONARY 1399 (1981).  "Having a meaning or purpose" surely does not illuminate the phrase in question.  Moreover, "meaningful" does not serve as a synonym for "substantial" or "significant" as a modifier of "a portion of its stock in trade," because a "meaningful portion of its stock in trade" establishes no objective standard at all.  This is especially so in light of Ms. McNair's formulation of substantial or significant as "meaningful to <u>either</u> the business or the town." (emphasis supplied).  And the term "significant other" is especially inappropriate to an assessment of compliance with the ordinance, since it is defined as "a person who is important to one's well-being; especially: a spouse or one in a similar relationship."  MERRIAM-WEBSTER ONLINE

3

DICTIONARY, *at* http://www.merriam-webster.com (last visited Jan. 22, 2010) (emphasis omitted).

To compound her unconstitutional application of the ordinance, Ms. McNair insisted that she "was unable to supply a mathematical definition" and "didn't really look at a percentage," although the ordinance clearly revolves around a measure of quantity, i.e. what portion of stock in trade is allowed to consist of adult items. In answer to an inquiry as to whether there were any "publicly available instructions or other guidance" that would be helpful to an applicant, the Town Manager answered: "Other than the ordinance, I don't believe so."

Ms. McNair described her methodology for examining VIP's application as follows:

> Basically I looked at the application. I looked at the list of what I would have called "inventory" that was attached to the application. I read our ordinance, as it was fairly new to me in my position as well as to the town. And I, based on those items and my own experience, I determined that it did need a license for a sexually oriented business.

Such a methodology cannot be said to provide a reasonable opportunity to VIP to know what is required. Under the test applied by the Town Manager, what is required is unknowable.

The lack of any instructions or guidance for interpreting the "substantial or significant" language of the ordinance makes for a sharp contrast between the administration of the Berlin ordinance and similar ordinances in other municipalities. The

4

amicus brief filed by the Connecticut Attorney General takes note of numerous municipalities in the State of Connecticut that specify anything over 10% of the stock in trade in adult items as sufficient to designate a business as sexually oriented. I note here that VIP is seeking to maintain an inventory of adult items at 12% but would stock only 10% to provide a 2% buffer, according to the testimony of Dominick DeMartino, owner of VIP.

Also by way of contrast, I refer to the zoning ordinance of the City of New York insofar as it governs adult bookstores. The ordinance refers to such stores as having a "substantial portion" of its "stock-in-trade" in adult items. See City of N.Y. v. Les Hommes, 94 N.Y.2d 267, 270 (1999) (internal quotation marks omitted). However, New York City has provided guidance in the form of an Operations Policy and Procedure Notice issued by the Department of Buildings. This administrative regulation provides that "'[if] at least 40 percent of the book store's total stock accessible or available . . . is comprised of adult materials, then the book store has a "substantial portion" of its stock in adult materials.'" Id. at 271. The New York Court of Appeals has held that the specific guidelines thus provided govern the allowable stock-in-trade.

And in a challenge to the zoning requirement by a sexually oriented business in New York City on the ground "that the ordinance's distance requirements are too vague because they do

not include a statement indicating the precise standard for measurement," the New York Court of Appeals noted the following:

> To the extent that this aspect of the ordinance's provision leaves room for confusion, the problem is procedurally remediable through administrative application and rule making. Notably, there is no indication on the present record that the City's enforcement of the distance rules will be arbitrary or uneven.

Stringfellow's of New York, Ltd. v. City of N.Y., 91 N.Y.2d 383, 405-06 (1998). The Town of Berlin has not remedied the confusion generated by the phrase at issue through administrative application or rule making, and the record here indicates that the enforcement of the ordinance is arbitrary and uneven.

In determining whether the regulation challenged here is constitutional as applied to the plaintiff, we are required to determine "whether the [ordinance] presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed." Thibodeau v. Portuondo, 486 F.3d 61, 67 (2d Cir. 2007) (Sotomayor, J.). In this connection, I refer to the uncontroverted testimony of Mr. DiMartino:

    Q.  Do you know what substantial or significant
        portion of stock in trade means in terms of
        an actual number?

    A.  No.

    Q.  Has anyone from the town ever told you an
        actual number that "substantial or
        significant portion of stock in trade" means?

A.   No.

Q.   And in denying your application, did the town provide you any information as to how you could come into compliance with that definition?

A.   No, they did not.

Although Ms. McNair responded in the affirmative to the question of whether she "believe[d] [that] most people will know one way or the other" (emphasis supplied) what is meant by "substantial and significant," it is apparent that Mr. DeMartino never was able to acquire such knowledge, either "one way or the other."

I can only conclude from the foregoing that the Berlin ordinance is unconstitutionally vague as applied to VIP because: it has been applied in an arbitrary way, without explicit and knowable standards; that a person of ordinary intelligence has no opportunity to know what is required; and that the interpretation by the Town Manager is inconsistent with the intent and purpose of the ordinance — to establish some measure for determining what numerical proportion of a store owner's inventory of adult items may be carried in a retail establishment not located in an area zoned for sexually oriented businesses. These conclusions are also informed by the past dealings between VIP and the Town of Berlin and the First Amendment implications of the ordinance.

For the foregoing reasons, I would affirm the Order of the District Court.