**John F. CURRAN, Jr., Plaintiff-Appellant,**

v.

**Richard C. LEE, Mayor, City of New Haven; the City of New Haven, and its Agents, Defendants-Appellees.**

No. 4, Docket 73–1374.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1973.

Decided Oct. 3, 1973.

John F. Curran, Jr., pro-se.

Thomas F. Keyes, Jr., Corp. Counsel, New Haven, Conn., for defendants-appellees.

Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.

PER CURIAM.

John F. Curran, Jr., appeals pro-se from a judgment in the District of Connecticut, entered January 17, 1973, which denied his application for an injunction against the New Haven, Connecticut St. Patrick's Day parade. Curran contends that aid by a city to a parade named for a religious figure violates the First and Fourteenth Amendments. We affirm.

Every year on the Sunday afternoon before St. Patrick's Day (March 17), a St. Patrick's Day parade takes place in

New Haven. Several of the city's streets are closed to traffic during the parade, and the city contributes modest amounts to the parade pursuant to its charter.[1] It appears that $1,000 was given in 1969, $1,000 in 1970, $1,200 in 1971, and $1,200 in 1972. New Haven also gives annual aid to the Columbus Day parade and to the Freddie Fixer parade (a tribute to the efforts of minority groups to clean depressed areas of the city).

On March 5, 1969, John F. Curran, Jr., seeking an injunction against the St. Patrick's Day parade, brought a pro-se action against Mayor Richard C. Lee,[2] the City of New Haven,[3] and its agents in the district court. The complaint alleged that the parade was a religious procession and that the use of city streets, equipment, employees, and money to aid it violated the First and Fourteenth Amendments. Curran is a resident of New Haven and alleged that he had been unsuccessful in efforts at public hearings to prevent appropriations to the St. Patrick's Day parade.

Defendants responded to the complaint with a motion to dismiss for lack of jurisdiction, in which they included a ground of lack of standing, which motion Judge Zampano denied on June 18, 1969.[4] The defendants then filed an answer denying the allegations of the complaint. Subsequently, Curran amended his complaint to request an injunction against all religious processions in New Haven streets and parks, except customary funeral processions.

On December 11, 1972, a hearing was held before Chief Judge Blumenfeld. At this hearing neither party introduced witnesses, but only submitted further argument. Chief Judge Blumenfeld reserved decision on the matter, and on January 17, 1973 filed an unpublished opinion in which he held that Curran was not entitled to relief.

Curran would have us hold that any aid by New Haven to the St. Patrick's Day parade is an unconstitutional act respecting an establishment of religion merely because St. Patrick is known as an apostle of the Roman Catholic faith.[5]

1. New Haven, Conn., Charter, vol. 1, § 62 (1971): "The board of finance, upon recommendation of the board of aldermen, may make appropriations for public receptions, parades, concerts, and celebrations to an amount not exceeding fifteen hundred dollars for any said purposes in any year. . . . "

2. Since this suit was filed, Bartholomew Guida has succeeded Richard C. Lee as mayor. We treat Guida as having been automatically substituted as a party. Any misnomer in the caption of this action is treated as one "not affecting substantial rights of the parties." Fed.R. Civ.P. 25(d).

3. The district court treated this complaint liberally because the plaintiff was proceeding pro-se. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Therefore, the complaint was treated as though proper parties were joined. Slip op. at 2 n. 4. Municipalities are not subject to suit under 42 U.S.C. § 1983. Monroe v. Pape, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

4. Appellees urge, as an alternative ground for affirmance, that Judge Zampano erred in upholding plaintiff's standing. The judge's citation of Frothingham v. Mellon, 262 U.S. 447, 486, 43 S.Ct. 597, 67 L.Ed. 1078 (1923), did not support his ruling, since the passage mentions only "resident taxpayers" and plaintiff had not shown himself to be such. However, plaintiff might have overcome this deficiency, and there is some recent precedent for a more liberal view of standing in cases under the Establishment Clause. See Allen v. Hickel, 138 U.S.App.D.C. 31, 424 F.2d 944, 946–947 (1970). In light of our holding on the merits, we think it unnecessary to consider appellees' alternative argument.

5. Appellant in his brief gives the following description of St. Patrick:
During the early fifth century there lived in Ireland a person renowned for his religious learning and remarkable achievements in the introduction of Roman Catholicism in Ireland, a country which had previously been dominated by paganism. Returning to Ireland after completing Theological studies on the Continent, he soon became a noted prelate and was elevated by Pope Leo to the office of Bishop of Ireland. During this period, he concentrated upon and zealously devoted his efforts in church building and missionary activities. Indeed, he is credited with the building of several hundred churches in

This we cannot do. The practice of honoring St. Patrick may be rooted in religious belief, but a parade named after him is not necessarily a religious procession. It is quite possible that the parade has evolved into a secular celebration by Irish-Americans and their friends. Cf. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

■■ The record in this case fails to give a description of the New Haven parade.[6] The degree of clergy or church participation is unknown. Similarly, the record fails to tell us whether the bands (if any) play religious or non-religious music, whether the floats (if any) depict religious or non-religious events, and whether the speeches made (if any) are on religious or non-religious topics.

■ Curran has not met his burden of showing that the aid given the parade violates the Establishment Clause. On this record we cannot tell what is the purpose of granting aid to the parade, what is the effect of granting such aid, and whether granting such aid fosters excessive governmental entanglement with religion. See Lemon v. Kurtzman, 403 U.S. 602, 612–613, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). Accordingly, we find no error in the district court's dismissal of the complaint.[7] Cf. Hunt v. McNair, 413 U.S. 734, 93 S.Ct. 2868, 37 L.Ed.2d 923 (1973); Tilton v. Richardson, 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971); Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968).

Affirmed.

---

Ireland, as well as the conversion of more than 12,000 persons to Roman Catholicism. Retiring from active church endeavors, he devoted the balance of his life to further religious studies and the writing of religious tracts.

This famous religious personality bore the name of Patrick, and was subsequently elevated to sainthood, and as Saint Patrick, he became the patron Saint of Ireland. He is still revered and commemorated as the patron Saint of Erin, notwithstanding his reduction in rank by a recent papal decree.

6. Chief Judge Blumenfeld realized the insufficiency of the evidence, but he took judicial notice of the "non-religious, essentially Irish-ethnic" composition of the parade. Slip op. at 2 & n. 5. The sources he cited appear to be general works about St. Patrick's Day parades in America. We feel that it is more appropriate to focus on the nature of the particular observance in New Haven, and we cannot take judicial notice of this.

7. Curran also complained at the hearing that New Haven had given the Polish Roman Catholic Union $550 to underwrite a convention that was held in New Haven during September 1970. He said that at that time he witnessed a parade with a cardinal, bishops, and priests in religious vestments. Curran does not claim that the convention has returned or will return to New Haven. Therefore, there is no basis for injunctive relief.