11-3517-cv
Commack Self-Service Kosher Meats, Inc. v. Hooker

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**


August Term, 2011


(Argued: February 27, 2012     Decided: May 10, 2012)


Docket No. 11-3517-cv


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


COMMACK SELF-SERVICE KOSHER MEATS,
INC., D/B/A COMMACK KOSHER DELI AND
MARKET, A/K/A COMMACK KOSHER, BRIAN
YARMEISCH, JEFFREY YARMEISCH,
EVELYN YARMEISCH,

        *Plaintiffs-Appellants*,


        v.


PATRICK HOOKER, Commissioner of the
Department of Agriculture and Markets of the
State of New York, LUZER WEISS, Rabbi,
Director of the Kosher Law Enforcement
Division, Department of Agriculture and
Markets of the State of New York,

        *Defendants-Appellees*,


State of New York,

        *Defendant.**


- - - - - - - - - - - - - - - - - - - - - - - - - - - - X


---

* The Clerk of Court is directed to amend the caption as shown above.

Before: WALKER, LYNCH, and DRONEY, *Circuit Judges*,

Plaintiffs-Appellants appeal from an order of the United States District Court for the Eastern District of New York (Gershon, *J.*), dismissing their complaint for failure to state a claim upon which relief can be granted. Plaintiffs-Appellants argue that New York's Kosher Law Protection Act of 2004 violates the Establishment and Free Exercise Clauses of the First Amendment and is unconstitutionally vague. We hold that the Kosher Act does not violate the Establishment Clause or the Free Exercise Clause and is not unconstitutionally vague. Accordingly, the judgment of the district court is AFFIRMED.

ROBERT JAY DINERSTEIN, Robert Jay Dinerstein, P.C., Commack, NY, *for* Plaintiffs-Appellants.

BRIAN A. SUTHERLAND, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Cecilia C. Chang, Deputy Solicitor General, Robert C. Weisz, Assistant Solicitor General, *on the brief*), Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for* Defendants-Appellees.

DRONEY, *Circuit Judge*:

Plaintiffs-Appellants Commack Self-Service Kosher Meats, Inc., d/b/a Commack Kosher Deli and Market, a/k/a Commack Kosher ("Commack Kosher"), Brian Yarmeisch, Jeffrey Yarmeisch, and Evelyn Yarmeisch (collectively with Commack Kosher, "the plaintiffs") challenged the constitutionality of New York State's kosher labeling and marketing statutes, enacted as the Kosher Law Protection Act of 2004 (the "Kosher Act" or "Act"). *See* Markets and Marketing–Consumer Protection–Kosher Foods, 2004 N.Y. Sess. Laws Ch. 151 (A. 9041-A) (McKinney) [hereinafter "Kosher Act"] (codified as N.Y. Agric. & Mkts. Law §§ 201-a–201-d). The district court (Gershon, *J.*) entered judgment in favor of the defendants, Patrick Hooker, Commissioner of the Department of Agriculture and Markets of the State of New York ("Department of Agriculture"), and Rabbi Luzer Weiss, Director of the Kosher Law Enforcement

Division ("KLED") of the Department of Agriculture, after granting the defendants' motion to dismiss.[1] The court found that the challenged laws do not violate the Establishment or Free Exercise Clauses and are not unconstitutionally vague.

For the reasons that follow, we affirm.

**BACKGROUND**

**I.    Factual Background**

Plaintiff-Appellant Commack Kosher is a delicatessen and butcher shop in Commack, New York, that specializes in kosher foods.  Plaintiffs-Appellants Brian, Jeffrey, and Evelyn Yarmeisch are shareholders, directors, and officers of Commack Kosher.  Commack Kosher operates under the kosher supervision of Rabbi William Berman, a Rabbi of a Conservative Jewish Synagogue.

In 1996, the plaintiffs filed an action in the United States District Court for the Eastern District of New York, challenging the constitutionality of the prior version of the Kosher Act that imposed inspection and labeling requirements on food marketed as kosher.  The plaintiffs alleged that those statutes violated the religious freedom clauses of the First Amendment to the United States Constitution (known as the "Establishment" and "Free Exercise" Clauses), as well as the Equal Protection and Due Process Clauses of the Fourteenth Amendment. *See Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 106 F. Supp. 2d 445, 446 (E.D.N.Y. 2000).  During that litigation, the plaintiffs challenged only the portions of the law which "define[d] kosher as prepared in accordance with orthodox Hebrew religious requirements, require[d] adherence to those requirements, or [we]re

---

[1] The plaintiffs also named as defendants the Governor of the State of New York as well as the State of New York; however, the plaintiffs withdrew their claims against the Governor early in the litigation and withdrew the claims against the State at oral argument on the motion to dismiss.  Also at oral argument, the plaintiffs withdrew their claims under New York's General Business Law § 349 and their claims under the New York State Constitution.

3

integral to the State's enforcement of such requirements." *Id.* at 447 n.2. The plaintiffs did not contest the sections of the law that simply required the labeling of the food as kosher or the identification or registration of the person or organization certifying a food product as kosher (the "certifier"). *See Commack Self-Serv. Kosher Meats, Inc. v. Weiss*, 294 F.3d 415, 425 n.6 (2d Cir. 2002) [hereinafter "*Commack I*"] (citing N.Y. Agric. & Mkts. Law §§ 201-g, 201-e(1)–(3), 201-i).

In 2000, the district court granted the plaintiffs' motion for summary judgment, finding that the challenged portions of the law facially violated the Establishment Clause[2] because that version of the Kosher Act required state officials to apply religious doctrine—namely Orthodox Jewish standards of *kashrut*—in order to determine whether the food was kosher.[3] *Commack*, 106 F. Supp. 2d at 455–56, 459. On appeal, this Court agreed, noting that although the State had a valid interest in protecting the general public against fraud in the marketing of kosher food, the challenged laws violated the Establishment Clause "by fostering excessive State entanglement with religion and by producing a primary effect that both advances and inhibits religion." *See Commack I*, 294 F.3d at 431–32. Specifically, the challenged laws excessively entangled the State with religion because, *inter alia*, "the challenged laws interpret[ed] 'kosher' as synonymous with the views of one branch [of Judaism], those of Orthodox Judaism." *Id.* at 426–27. The prior Kosher Act also had the effect of both advancing religion, namely the dietary restrictions of Orthodox Judaism, and inhibiting

---

[2] The specific sections of the law found to be unconstitutional were N.Y. Agric. & Mkts. Law §§ 201-a, 201-b(1), 201-c, 201-e(2-a) and (3-c), 201-f, 201-h, and 26-a. *Commack*, 106 F. Supp. 2d at 459.

[3] *Kashrut* is "the Hebrew noun from which 'kosher' is derived"and is a "centuries-old Jewish law" that "encompasses the entire body of rules relating to foods that may be consumed as well as the preparation of such foods." *Commack I*, 294 F.3d at 418.

4

religion, by preventing labeling of food products as kosher that did not meet the Orthodox Jewish religious requirements. *Id.* at 430.

Following this Court's decision, the New York State Legislature passed the Kosher Law Protection Act of 2004. N.Y. Agric. & Mkts. Law §§ 201-a–201-d; *see also* Kosher Act. This law repealed certain sections of the prior Kosher Act and added three new sections, 201-a, 201-b, and 201-c, which retained—in revised form—certain provisions of the former law. *See* Kosher Act §§ 3–4.[4] The new Kosher Act imposed requirements on sellers and manufacturers that market their food products as "kosher" to label those foods as kosher and to identify the individuals certifying their kosher nature, but did not define kosher or authorize state inspectors to determine the kosher nature of the products. *See generally id.* In promulgating this new law, the Legislature noted that "a significant number of consumers within the state seek to purchase food products that are kosher, and that many of those consumers do so for reasons unrelated to religious observance." *Id.* § 2. The Legislature found it "essential that consumers be provided clear and accurate information about the food they are purchasing, and that this goal is furthered by requiring vendors of food and food products represented as kosher to make available to consumers the basis for that representation." *Id.*

**II.     Procedural History**

The plaintiffs initiated the current suit on February 15, 2008, challenging the constitutionality of the new Kosher Act and alleging that the law discriminated against non-Orthodox Jews and impermissibly gave the state a supervisory role over what is "kosher." Specifically, the plaintiffs

---

[4] The New York State Legislature subsequently enacted additional amendments to Sections 201-a and 201-b in 2005 that do not affect the nature or analysis of this appeal. *See* Agricultural Products—Kosher Food, 2005 N.Y. Sess. Laws Ch. 543 (A. 8903) (McKinney).

claimed that the labeling requirements of the Kosher Act violate the Establishment Clause because there is no *halachic* (Jewish Law) requirement that to be considered kosher all food must bear a label stating it is kosher, and certain non-Orthodox Jews wish to market and purchase particular kosher foods without a kosher label or designation. The plaintiffs contended that by adopting a labeling requirement, the challenged statutes discriminate against non-Orthodox Jews and some kosher food purveyors. The plaintiffs also argued that the inspection provision that grants the Department of Agriculture the authority to inspect all food establishments for compliance with the Kosher Act directly or indirectly involves an analysis of the acceptability or reliability of the "kosher nature" of the food that is sold.[3] Additionally, the plaintiffs claimed that the Kosher Act violates the Free Exercise Clause because it constitutes an impermissible regulation of a religious practice—whether a product is kosher—and was not the least restrictive means of preventing fraud. Finally, the plaintiffs argued that the language of the Kosher Act is unconstitutionally vague.

On August 3, 2011, the district court granted the defendants' motion to dismiss the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), finding that the Kosher Act did not violate the Free Exercise and Establishment Clauses of the First Amendment and was not void for vagueness. *See Commack Self-Serv. Kosher Meats, Inc. v. Hooker*, 800 F. Supp. 2d 405, 414–15, 417 (E.D.N.Y. 2011). The district court concluded that the New York State Legislature passed the Kosher Act for a valid secular purpose—namely the need to protect consumers from fraud in the kosher food market. *Id.* at 413. The district court also concluded that, unlike the prior version of

---

[3] As support, the plaintiffs claimed that one inspector advised the plaintiffs that it was his function to verify that the food offered for sale at Commack Kosher "was otherwise acceptably *kosher*." No violations were issued as a result of the inspection, however, and the defendants maintain that such a determination by an inspector is not permitted under the Kosher Act.

6

the Kosher Act, this legislation is "purely a labeling and disclosure law" and neither endorses a particular religious viewpoint nor creates an impermissible entanglement with religion. *See id.* at 413–14. The court pointed out that the State does not have the authority through the Kosher Act to determine if a product is kosher under religious law, and the KLED inspectors do not have the authority to verify whether foods are "acceptably kosher." *Id.* at 414–15. Similarly, the district court held that the Kosher Act does not impermissibly regulate a religious practice in contravention of the Free Exercise Clause because the State does not determine whether a product is kosher. *Id.* at 415. The court also concluded that the Kosher Act was a law of general applicability, with only the incidental burden on producers and retail vendors of labeling and disclosing information regarding the qualifications of their kosher certifier. *See id.* at 416. As such, the district court found that the State need only have a rational basis for its enforcement of the Kosher Act, a test the district court deemed the Kosher Act met. *See id.* at 416–17. Finally, the district court held the Kosher Act was not unconstitutionally vague. *Id.* at 417.

Judgment was entered for the defendants on August 4, 2011. This appeal followed.

**DISCUSSION**

"[W]e review *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6)." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 88 (2d Cir. 2011). In conducting this review, we construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted). This Court should affirm "only if the plaintiff fails to provide factual allegations sufficient to raise a right to relief above the speculative level." *Id.* (internal quotation marks

7

omitted). We also review *de novo* the district court's legal conclusions, including those conclusions interpreting and determining the constitutionality of a statute. *United States v. Stewart*, 590 F.3d 93, 109 (2d Cir. 2009); *see also KLC, Inc. v. Trayner*, 426 F.3d 172, 174 (2d Cir. 2005) ("Because the issue on appeal involves the interpretation of a state statute and the definition of its terms presents a question of law, we review the trial court's ruling *de novo*.").

**I.      Kosher Law Protection Act of 2004**

The history of New York's kosher fraud statutes, which date back to 1915, was described in *Commack I. See Commack I*, 294 F.3d at 423. Like its immediate predecessor, the amended Kosher Act is contained in Article 17 of the State's Agriculture and Markets Law entitled "Adulteration, Packing, and Branding of Food and Food Products." In summary, the Kosher Act requires: (1) that any food establishment that sells or offers for sale food prepared on its premises or under its control that is represented as kosher post a kosher certification form on the premises; (2) that any individual packaging a product which is sold or offered for sale as "kosher" or "kosher for passover" label these products as such; (3) that any person selling both kosher and non-kosher products post a window sign indicating that both kosher and non-kosher products are sold there; and (4) that any individual certifying a food product as kosher file his or her identifying information with the Department of Agriculture, and if that individual is certifying non-prepackaged food as kosher, he or she must also file a statement of his or her qualifications for providing such certification. The relevant portions of the Kosher Act are articulated in greater detail below.

Section 201-a, entitled "Kosher food and food products; packaging," requires, in relevant part, that "packers" or manufacturers of products sold or offered for sale as kosher affix a kosher label to these products. N.Y. Agric. & Mkts. Law §§ 201-a(1)–(2). Furthermore, any food product

8

labeled as "kosher," "kosher for passover," "rabbinical supervision," or labeled with any other generic marking indicating that the food product is kosher, may not be sold or offered for sale by the producer or distributor of such food product until the individual certifying such food products as kosher has registered with the Department of Agriculture and provided identifying information. *See id.* §§ 201-a(3)–(4); *see also id.* § 201-a(6) (requiring that any advertisement for food products which represents that such food products are kosher identify the name of the person or entity certifying such food products as kosher).

Section 201-b, entitled "Retail sale of kosher food or food products," provides, in part:

> 2. All fresh meat, meat preparations, meat by-products and poultry sold or offered for sale at retail as kosher shall be marked on the label when packaged, or by a sign when not packaged, with the words "soaked and salted" or "not soaked and salted," as the case may be. Such words, when marked on a label or a sign, shall be in letters at least as large as the letters of the words on the label or sign designating such meat, meat preparations, meat by-products and poultry as kosher.

Section 201-b(1) also requires that any establishment that sells both kosher and non-kosher food products indicate in window signs that both kosher and non-kosher food products are sold there. Section 201-b(3) requires that vendors of kosher meat or kosher poultry maintain a record of each purchase of such products, including any records relating to the origin of the meat or poultry, for two years after the sale of such products.

Section 201-c is captioned "Persons certifying as kosher; filing with department" and requires that any individual who certifies non-prepackaged food products as kosher or kosher for Passover file a statement of such person's qualifications with the Department of Agriculture. *Id.* § 201-c(1). Food establishments and caterers offering food products for sale that are prepared on

9

premises and represented as kosher must post a "kosher certification form"[4] in a visible location on the premises and file such certification with the Department of Agriculture. *Id.* § 201-c(3).

These same establishments must also maintain a logbook of each inspection visit by the person certifying the food as kosher that includes the name and signature of the individual certifying

---

[4] The kosher certification form must be in the following format and contain the following information:

KOSHER CERTIFICATION FORM

Name of Establishment: _____

Address: _____

Name of Individual or Organization Certifying Food as Kosher: _____

Address & Phone Number of Certifying Individual or Organization: _____

Affiliation & Education of Certifying Individual or Organization: _____

The certifying individual or organization visits this establishment:

___time(s) daily ___time(s) weekly ___time(s) monthly ___time(s) yearly

All meat sold or served by this establishment __is __is not soaked and salted.

Describe soaking and salting process: _____

We ___do ___do not exclusively sell or serve kosher food.

Establishment selling and serving both kosher and nonkosher food must complete the following: We __do __do not use separate ovens and sinks for kosher and nonkosher foods. We __do __do not use separate utensils, refrigerators, freezers and storage areas for kosher and nonkosher foods. All utensils and equipment __are __are not clearly identified as kosher or nonkosher. Nonkosher products __are __are not mixed with kosher products and then sold as kosher.

the food products as kosher, and the date and time of the visit.[5]  *Id.* § 201-c(4).  Moreover, § 201-c(5) provides,

> The department is authorized to inspect all food establishments and caterers selling or offering for sale food or food products represented as kosher to ensure compliance with sections two hundred one-a and two hundred one-b of this article and this section, and the accuracy of any information supplied in accordance with such sections. The commissioner is authorized to promulgate rules and regulations as are necessary to further implement the provisions of sections two hundred one-a and two hundred one-b of this article and this section.  The department shall develop and maintain a website that makes available to consumers copies of all forms and certification information that are required by this section.

Failure to comply with any requirements of the Kosher Act results in a fine.  *Id.* § 201-c(6).

Finally, § 201-d provides for written notice to the violator of the violations charged and the penalty assessed, as well as disclosure to the public of the name and address of the violator, the date of inspection, the violation, and the penalty assessed.

**II.     Establishment Clause Challenge**

"[T]he Establishment Clause of the First Amendment, which is applicable to the states through the Fourteenth Amendment, provides that 'Congress shall make no law respecting an establishment of religion[.]' "  *Doe v. Phillips*, 81 F.3d 1204, 1210 (2d Cir. 1996) (quoting U.S. Const. amend. I) (internal citation omitted).  The United States Supreme Court has interpreted this Clause to protect against three main "evils": "sponsorship, financial support, and active involvement

---

[5] The plaintiffs did not and do not challenge the constitutionality of the provision requiring the certifiers to register with the Department of Agriculture (§ 201-c(1)), nor do the plaintiffs challenge the posting requirement that gives notice of the establishment's certifier (§ 201-c(3)), or the logbook setting forth the dates the certifier visits the establishment (§ 201-c(4)).

of the sovereign in religious activity." *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971) (internal quotation marks omitted).

In evaluating a facial challenge to a law on Establishment Clause grounds, courts apply the three factors articulated in *Lemon*. *See Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 314 (2000). *Lemon* counsels that the law, to survive such a challenge, must first, "have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." *Lemon*, 403 U.S. at 612–13 (internal citations and quotation marks omitted). Courts have frequently treated the "excessive entanglement prong" of the *Lemon* test as part of the inquiry into a statute's principal or primary effect. *See DeStefano v. Emergency Hous. Grp., Inc.*, 247 F.3d 397, 406 (2d Cir. 2001). "Thus, when presented with Establishment Clause challenges, we are required to ask whether the government acted with the purpose of advancing or inhibiting religion and whether the aid has the effect of advancing or inhibiting religion." *Id.* (internal quotation marks omitted).

We will first discuss the purpose of the statute. We will then turn to the "excessive entanglement" prong, followed by the question of the statute's principal or primary effect.

*A.      Secular Legislative Purpose*

"The [Supreme] Court has invalidated legislation . . . on the ground that a secular purpose was lacking, . . . only when it has concluded there was no question that the statute . . . was motivated *wholly* by religious considerations." *Lynch v. Donnelly*, 465 U.S. 668, 680 (1984) (emphasis added). In *Commack I*, this Court concluded that the State has a valid secular interest in protecting against fraud in the kosher food market, and that this interest extends to the general public. *Commack I*, 294 F.3d at 431. The plaintiffs now contend, however, that the stated purposes for the Act are "merely

a pretext for discrimination against non-Orthodox Jews."[6] According to the plaintiffs, consumers cannot rely on the kosher label because the sellers of kosher food may label the product as "kosher" pursuant to any criteria they choose. Thus, the plaintiffs claim that the labeling may ultimately be misleading to the consumer and is a "meaningless exercise," unless it is viewed as an attempt by the state to impose Orthodox requirements on sellers of kosher products.[7]

"When a governmental entity professes a secular purpose for an arguably religious policy, the government's characterization is, of course, entitled to some deference. But it is nonetheless the duty of the courts to 'distinguis[h] a sham secular purpose from a sincere one.' " *Santa Fe*, 530 U.S. at 308 (quoting *Wallace v. Jaffree*, 472 U.S. 38, 75 (1985) (O'Connor, *J.*, concurring)). In analyzing whether the legislators had such a "sincere" motive, the Court may consider whether an " 'objective observer, acquainted with the text, legislative history, and implementation of the statute' " can determine the motive. *McCreary Cnty., Ky. v. Am. Civ. Liberties Union of Ky.*, 545 U.S. 844, 863 (2005) (quoting *Santa Fe*, 530 U.S. at 308).

Although consuming kosher food products may have begun as a purely religious practice, sales of kosher food have grown to the point that Jewish consumers reportedly now make up less than thirty percent of the consumers of kosher food. *Commack I*, 294 F.3d at 431; *see also Curran v. Lee*, 484 F.2d 1348, 1349–50 (2d Cir. 1973) (aid by the city of New Haven to the St. Patrick's

---

[6] This argument contradicts the plaintiffs' prior position. In *Commack I*, this Court noted that the secular purpose prong was "uncontested" and that "the parties [which included the plaintiffs in this current suit] *do not dispute* that the challenged laws were enacted for the secular purpose of protecting consumers from fraud in the kosher food market." *Commack I*, 294 F.3d at 431 (emphasis added).

[7] The plaintiffs also allege that New York has a "long history of favoring Orthodox Judaism," as demonstrated by the language of the former Kosher Act and other bases.

13

Day parade is not an establishment of religion because, even though the practice of honoring St. Patrick may be rooted in religious belief, a parade named after him is not necessarily religious and has possibly "evolved into a secular celebration by Irish-Americans and their friends"). Indeed, as the district court noted, and as discussed in the " '[l]egislative findings and intent' " of the Kosher Act, " 'a significant number of consumers' " in New York State seek to purchase kosher food products, and " 'many of those consumers do so for reasons unrelated to religious observance'." *Commack*, 800 F. Supp. 2d at 413 (quoting Kosher Act § 2). The Kosher Act's goal of providing clear and accurate information to these consumers about the food they are purchasing, " 'is furthered by requiring vendors of food and food products represented as kosher to make available to consumers the basis for that representation.' " *See id.* (quoting Kosher Act § 2). Thus, the legislative history is clear that the labeling law has the secular purpose of protecting against fraud by informing a consumer that a particular seller believes a product is kosher. *See* Kosher Act § 2; *see also* N.Y. Agric. & Mkts. Law § 201-a. The consumer can then examine the kosher certifying criteria of the seller. *See* N.Y. Agric. & Mkts. Law §§ 201-a(3)–(4); 201-c(1), (3).[8] Unlike its prior version, the Kosher Act does not adopt a definition, interpretation or standard for the term "kosher," and the plaintiffs have not alleged that the Act has been implemented in a discriminatory manner. Therefore, an objective observer acquainted with the text, legislative history, and implementation of the statute would conclude that the purpose of the statute was secular.

We now turn to the entanglement and advancement prongs of the *Lemon* test.

---

[8] Some of this certifying information is available at the store itself, while other information is available on the Department of Agriculture's website. *See id.* §§ 201-c(3), (5); *see also* Department of Agriculture and Markets, Kosher Law Enforcement, http://www.agriculture.ny.gov/KO/KOHome.html (last visited May 7, 2012).

14

**B.** *The Entanglement Factor*

The plaintiffs argue that the Kosher Act impermissibly entangles the State with religion because it requires goods sold as kosher to bear a kosher label. The plaintiffs assert that many food items are "acceptably kosher" to non-Orthodox Jews even if they do not bear a kosher label; conversely, Orthodox Jews will normally not purchase food without a kosher label. Thus, the plaintiffs claim that the Act adopts an "Orthodox" labeling requirement and thereby entangles the State in religion by favoring Orthodox Jews.

The Kosher Act, however, does not adopt an Orthodox standard of *kashrut*, nor does it regulate what foods are acceptably kosher or take a position on what it means for a product to be considered kosher: each seller or producer of kosher goods has the ability to determine for itself what standard of *kashrut* they follow. The law only requires that if a product is to be held out to the public as "kosher," the product must bear a label describing it as such, and information is to be provided to the purchaser as to the basis for that description. The presence of the label does not affect the seller's assessment of the kosher nature of a product and is not what makes a product kosher or not kosher. The label simply indicates to the consumers that the seller or producer, and its certifier, believe the food to be kosher under their own standards.

The plaintiffs also argue that there is no religious requirement that all kosher products bear a label, and that they specifically do not want to label certain foods as kosher. As the district court noted, however, the Kosher Act does not enforce religious law or religious requirements. *Commack*, 800 F. Supp. 2d at 416. The Kosher Act merely requires food products marketed as kosher to be labeled as kosher. Thus, the Kosher Act does not entangle the State with religion because it does not require the State to enforce laws based on religious doctrine or to inquire into the religious

content or religious nature of the products sold. *Cf. Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 378, 396 (1990) ("From the State's point of view, the critical question is not whether the materials are religious, but whether there is a sale or a use, a question which involves only a secular determination.").

The plaintiffs attempt to analogize the amended Kosher Act to the prior Act's labeling requirements. However, under the prior Act, the State required a seller to follow specific processes set forth in the Act that followed the Orthodox Jewish food preparation standards of "kosher" before a product could be marketed as kosher. *Cf. Commack I*, 294 F.3d at 426–27. The prior Act also gave the State the ability to delegate advisory power under the law to a board on the basis of religion—indeed, all six rabbis on the board were of the Orthodox Jewish faith. *Id.* at 428–29. Neither situation is present here: the term "kosher" is not defined in the statute, no specific religious processes are detailed as required for kosher labeling, no particular religious viewpoint is referenced, and no particular religion or denomination is given preference.

The plaintiffs also argue that § 201-c(5), authorizing the Department of Agriculture to inspect all food establishments selling kosher products to ensure "the accuracy of any information supplied in accordance with" §§ 201-a–c, entangles the State with religion by granting inspectors the authority to verify whether or not a particular item labeled as kosher *actually is* kosher pursuant to Jewish law.[9] To analyze whether the plaintiffs' view of the statute is correct, we must first

---

[9] The defendants argue that the plaintiffs' challenge to the inspection provision has not been preserved for appellate review. The plaintiffs admit that they did not make this particular argument at the district court; however, certain arguments regarding the inspection provision were addressed below. *See Commack*, 800 F. Supp. 2d at 412 n.2 (stating that the plaintiffs had claimed that the inspection mechanism violated "the purveyor's constitutional rights" by permitting inspectors to do "more than verify that the purveyor has complied with the sections to

16

determine whether the language at issue has a plain and unambiguous meaning. *See Universal Church v. Geltzer*, 463 F.3d 218, 223 (2d Cir. 2006). In so doing, we consider the language in the specific context in which it is used, as well as in the broader context of the statute of the whole. *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009); *see also Universal Church*, 463 F.3d at 223; *People v. Ballman*, 15 N.Y.3d 68, 72 (2010) ("When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature." (internal quotation marks omitted)). The plaintiffs' challenge focuses on the meaning of the words "any information" in the statute, arguing that this phrase means that the inspectors act "without restriction or limitation" and can thereby "ascertain whether the food [labeled as kosher] is actually kosher under Jewish religious dietary laws." The issue, however, is what "information" is supplied pursuant to the statutes—namely, whether this includes the assessment of whether the food product is "kosher."

Unlike the prior law, the Kosher Act contains no definition of or standard for "kosher." As the plaintiffs concede, for the inspectors to verify whether a product is "actually kosher," the Legislature would first need to adopt an official position as to what is or is not kosher. No such position has been adopted here. The plaintiffs' assertion that the KLED inspectors are not trained in Jewish law only further demonstrates that their interpretation of the law is incorrect. Indeed,

which plaintiffs have not objected"). Even if the plaintiffs waived the argument, the rule against considering claims for the first time on appeal "is prudential, not jurisdictional" and the Court has "discretion to consider waived arguments." *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004). The Court has exercised this discretion previously to avoid manifest injustice or if the argument presents a question of law and there is no need for additional fact-finding. *Id.*; *see also Baker v. Dorfman*, 239 F.3d 415, 420–21 (2d Cir. 2000). Therefore, because this is a pure question of law, we will review the challenge to this section of the Kosher Act.

unlike the prior Act, there is no advisory board to counsel or consult on matters of kosher enforcement. Therefore, § 201-c can only be interpreted as authorizing inspectors to assess compliance with and the accuracy of the information filed with the Department of Agriculture and the Commissioner, not to engage in a substantive evaluation of whether a food item is or is not "kosher."[10] *See In re Chapman*, 166 U.S. 661, 667 (1897) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or absurd conclusion."). Such routine regulatory interactions between the State and sellers of kosher products, which involve no inquiries into religious doctrine, no delegation of state power to a religious body, and no detailed monitoring or close administrative contact between secular and religious bodies, do not violate the non-entanglement command of the First Amendment. *See Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 696–97 (1989).

Thus, unlike the statute at issue in *Commack I*, the Kosher Act does not foster an excessive government entanglement with religion.

*C.    Advancement of Religion Factor*

The plaintiffs also contend that the Kosher Act has the primary effect of both promoting and inhibiting religion by taking sides in a religious matter. The plaintiffs' arguments on the advancement factor fail for many of the same reasons as their arguments on the excessive entanglement part of the *Lemon* test.

---

[10] The plaintiffs' argument that the Kosher Act's alleged requirement that inspectors should determine whether a particular label is being properly used is a purely religious function similarly fails. The Department of Agriculture is not empowered to monitor or verify the religious basis for the label; rather, the KLED inspector is simply determining whether the individual utilizing the label has appropriately registered with the Department of Agriculture.

The Kosher Act does not endorse a particular religious denomination or sect, but merely requires a seller of kosher products to label those products held out as kosher. Although the plaintiffs argue that the Kosher Act "adopts" and "adheres to" Orthodox requirements, unlike in *Commack I*, there is no "preference by [the] government of one interpretation of sacred text over others." *Commack I*, 294 F.3d at 430. The labeling requirement *may* be similar to practices under Orthodox Judaism in that it requires all products sold as kosher to be labeled as such; "[b]ut a statute primarily having a secular effect does not violate the Establishment Clause merely because it 'happens to coincide or harmonize with the tenets of some or all religions.' " *Hernandez*, 490 U.S. at 696 (quoting *McGowan v. Maryland*, 366 U.S. 420, 442 (1961)); *see also McGowan*, 366 U.S. at 444–45 (noting that Sunday closing laws further the purpose of providing a uniform day of rest for citizens; the fact that Sunday is a date of particular significance to Christian sects does not bar the State from achieving its secular goals); *Curran*, 484 F.2d at 1349–50. Here, applying a label to a food product to inform consumers that the product has been deemed "kosher" by the seller or producer merely happens to coincide with Orthodox Jewish practice and does not evidence a specific endorsement or impairment of any religious practice or viewpoint.

The plaintiffs also argue that, because of the inherently religious nature of the observance of *kashrut*, the State will be perceived as having chosen among the various existing religious views regarding the need for or appropriateness of kosher labeling. This argument too fails. "In discussing the second prong of the *Lemon* test, the Supreme Court has warned that violation of the Establishment Clause can result from *perception* of endorsement. The Establishment Clause, at the very least, prohibits government from *appearing* to take a position on questions of religious belief . . . ." *Bronx Household of Faith v. Bd. of Educ. of the City of N.Y.*, 650 F.3d 30, 40–41 (2d Cir.

19

2011) (internal quotation marks omitted).  New York, through the Kosher Act, has not explicitly adopted or endorsed one religion or religious group over another, nor has it encouraged particular religious activities.  The neutral labeling requirement does not define "kosher" or any other religious terms and contrasts with prior situations in which this Court has found a perception of endorsement. *See Lamont v. Woods*, 948 F.2d 825, 839–40 (2d Cir. 1991) (noting that the "message communicated by direct government funding" to foreign sectarian schools may offend the Establishment Clause); *Parents' Ass'n of P.S. 16 v. Quinones*, 803 F.2d 1235, 1241 (2d Cir. 1986) (perception of endorsement when, *inter alia*, female Hasidic children were taught in classrooms that only they could use and non-Hasidic children could not use, Yiddish was spoken in those classrooms, and a partition was erected to physically separate the Hasidic girls from the remainder of the school population).

Therefore, because the amended Kosher Act neither advances nor impedes religion, has a secular purpose, and does not create an excessive entanglement between state and religion, it does not violate the Establishment Clause of the First Amendment.

**III.    Free Exercise Challenge**

The plaintiffs argue that the Kosher Act violates the Free Exercise Clause of the First Amendment, which applies to the states through the Fourteenth Amendment, *see Walz v. Tax Comm'n of City of N.Y.*, 397 U.S. 664, 702 (1970), by impermissibly regulating religious practices in a non-neutral fashion and substantially burdening the plaintiffs' religious beliefs.

"At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508

20

U.S. 520, 532 (1993).  Nonetheless, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation marks omitted).  "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Lukumi*, 508 U.S. at 533 (internal citation omitted).  However, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531.

The Kosher Act is a law of general applicability.  It applies to any seller who offers products for sale as "kosher" regardless of the seller's religious belief or affiliation.  Moreover, the labeling requirement of the Act impacts all consumers of kosher products, regardless of the consumer's religious belief.  Although consumers of kosher products may initially only have included members of the Jewish faith, "Jewish consumers reportedly now make up less than thirty percent of the consumers of kosher food.  The remainder are Muslims and others with similar religious requirements, persons with special dietary restrictions, and those who simply prefer food bearing the kosher label as a symbol of purity." *Commack I*, 294 F.3d at 431 (internal citation omitted); *see also* Kosher Act § 2 ("[A] significant number of consumers within the state seek to purchase food products that are kosher, and . . . many of those consumers do so for reasons unrelated to religious observance.").  Thus, as this Court recognized in *Commack I*, the "interest in protecting against fraud in the kosher food market extends to the general public." *Commack I*, 294 F.3d at 431.

21

The plaintiffs also concede that the Act is neutral on its face. Nonetheless, the plaintiffs argue this facial neutrality is not determinative. *Cf. Lukumi*, 508 U.S. at 534 (the Free Exercise Clause "forbids subtle departures from neutrality" and "covert suppression of particular religious beliefs" (internal quotation marks omitted)). Specifically, the plaintiffs contend that whether a law is neutral or discriminatory can be gleaned, not only from the statutory language, but also from direct or circumstantial evidence of intent, including the legislative history and the historical background of the statute. The plaintiffs claim that these factors demonstrate a discriminatory purpose, and that the Act does not have a truly secular purpose.

An individual alleging such "religious gerrymandering" "must be able to show the *absence of a neutral, secular basis for the lines government has drawn." *Gillette v. United States*, 401 U.S. 437, 452 (1971) (emphasis added). "Relevant evidence [of the basis of the law] includes . . . the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Lukumi*, 508 U.S. at 540. As discussed earlier, these factors demonstrate that the Legislature is not attempting to challenge the plaintiffs' religious beliefs and that there is a neutral, secular purpose for the Kosher Act. In *Lukumi*, the local animal protection ordinances found by the Supreme Court to have violated the Free Exercise Clause were clearly enacted in response to a particular church practicing a religion which required animal sacrifice. *Lukumi*, 508 U.S. at 526–27.[11] Here, the New York State

---

[11] Indeed, the city council's first Resolution explicitly noted a "concern" of the city residents "that certain religions may propose to engage in practices which are inconsistent with public morals, peace or safety." *Id.* at 526, 535 (internal quotation marks omitted).

Legislature enacted the Kosher Act to further consumer protection for a particular type of food purchased by individuals of many different religious beliefs; nothing in the text or legislative history of the amended Kosher Act demonstrates that the object of this Act was to "infringe upon or restrict practices because of their religious motivation." *See id.* at 533.

The plaintiffs also argue that targeting is obvious because the Kosher Act proscribes more religious conduct than necessary by visiting "gratuitous restrictions" on religious conduct. According to the plaintiffs, such restrictions include the requirement of labeling of kosher products, the "extensive record keeping requirements of § 201-b(3)," the monitoring of the use of labels, and the "broad, unrestricted enforcement authority delegated to inspectors to verify the 'accuracy' of kosher labeling information." Although the plaintiffs claim these requirements interfere with their ability to have a rabbi decide all matters of *kashrut*, the statute does not provide inspectors with the power to verify the accuracy of whether a product is or is not kosher or to verify the accuracy of the labels. Additionally, the statute does not define "kosher" or prevent a producer or seller of kosher products from certifying products as kosher pursuant to its own standards. Indeed, under the statute, a producer or seller can choose *any* individual it desires to certify the kosher products, as long as that individual files his or her identifying information and statement of qualifications with the Commissioner of the Department of Agriculture. N.Y. Agric. & Mkts. Law § 201-c(1)–(2). Thus, these requirements do not restrict the plaintiffs' or anyone else's right to define or practice *kashrut* as they choose. Moreover, these requirements are not "gratuitous," as the plaintiffs claim. Rather, they are merely elements of the State's goal of preventing fraud in the kosher market by identifying, for the benefit of consumers, which products are being marketed as kosher, and the basis on which

23

they are asserted to be so, in order to enable consumers to make their own decisions as to whether to accept the assertion according to their own religious or non-religious standards.

Finally, the plaintiffs argue that the Kosher Act places a substantial burden on the exercise of their religious beliefs and that a compelling governmental interest is necessary to justify this burden. The plaintiffs also emphasize that the law could achieve the same purposes if drawn more narrowly. However, when the government seeks to enforce a law that is neutral and generally applicable, "it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002); *see also Lukumi* 508 U.S. at 531–32 (a law that is *not* neutral and generally applicable "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest"). Any burden on sellers and producers of kosher food to label products represented as kosher is minimal. Moreover, the State's reasons for enacting the Kosher Act, that it is "essential that consumers be provided clear and accurate information about the food they are purchasing, and that this goal is furthered by requiring vendors of food and food products represented as kosher to make available to consumers the basis for that representation," Kosher Act § 2, is a rational basis for enforcing the Kosher Act. Finally, as the district court noted, the State cannot simply utilize the general anti-fraud statutes in this context because "the State would be called upon to make a determination regarding what is kosher and what is not kosher; and the State has reasonably chosen to require more than uninspected certification forms and logs." *Commack*, 800 F. Supp. 2d at 417.

Therefore, because the amended Kosher Act is neutral, generally applicable, minimally burdensome, and has a rational basis, no Free Exercise violation exists.

24

## IV.    Vagueness Challenge

"As one of the most fundamental protections of the Due Process Clause, the void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (internal citations and quotation marks omitted). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir. 2010) (internal quotation marks omitted). "The degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all. When a statute is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts." *Id.* (internal citation, footnote, and quotation marks omitted).

The Supreme Court in *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972), has directed that in interpreting a statute, the court is relegated to the words of the law, the interpretations the relevant courts have given to analogous statutes, "and, perhaps to some degree, to the interpretation of the statute given by those charged with enforcing it." Indeed, the court does not look at the statutory language in isolation; rather, the court considers the language in context, with the benefit of the cannons of statutory construction and legislative history. *United States v. Farhane*, 634 F.3d 127, 142 (2d Cir. 2011).

25

The plaintiffs note that § 201-a(2) requires "unpackaged foods, when sold" to be wrapped and bear a kosher label, and that this section is in conflict with § 201-b(2), which indicates that the kosher labeling requirement may be met by placing a sign near unpackaged products rather than a label. However, § 201-b(2) calls for meat or poultry to bear a label *when packaged* and have a sign *when not packaged*. Section 201-a(2), requiring products that are not packaged in a container to bear a "kosher" label when sold or offered for sale, is not in conflict with this provision. Thus, meat and poultry products must be accompanied by a sign when unpackaged, and all unpackaged products should bear a label when packaged for sale. "Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the [statute] are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' but . . . it is clear what the [statute] as a whole prohibits." *Grayned*, 408 U.S. at 110 (internal footnote and citation omitted). Even under the strictest standard of review, a person of ordinary intelligence would know how to comply with the labeling law. Moreover, there is no risk of arbitrary or discriminatory enforcement of the labeling provision.

Additionally, the plaintiffs claim the inspection provision of the Kosher Act, § 201-c(5), is void for vagueness because a seller of kosher food could not possibly know how to comply with the law and ensure that the kosher-labeled products are "actually" kosher. However, the Kosher Act does not authorize KLED inspectors or the Department of Agriculture to assess the accuracy of a kosher determination. The seller or manufacturer labels food as kosher as required by the kosher standard the seller or manufacturer and its certifier choose to follow. Section 201-c(5) only permits inspectors to assess compliance with the Act's filing and labeling requirements and the accuracy of

26

the information filed with the Department of Agriculture and the Commissioner.[12] This conclusion is confirmed when analyzing the interpretation of the statute given by the defendants—those charged with enforcing it. *See Greyned*, 408 U.S. at 110. Here, the defendants assert that they have no intention or authority to verify any information beyond neutral, non-religious factual information submitted to the Commissioner and the Department of Agriculture. Indeed, since the new law was enacted, the plaintiffs do not claim that they ever received a citation for a food product not being "acceptably kosher." Therefore, even under the strictest scrutiny, the inspection provision is not void for vagueness.

## CONCLUSION

We have considered all of the plaintiffs' arguments on appeal and find them to be without merit. For the foregoing reasons, we AFFIRM the district court's judgment upholding the constitutionality of the Kosher Act and finding that the Kosher Act neither violates the Establishment or Free Exercise Clauses of the Constitution nor is unconstitutionally vague.

---

[12] The plaintiffs do not make a vagueness challenge with respect to the requirements of filing with the Department of Agriculture and the Commissioner.