Michael PALLADINO, as President of the Detectives' Endowment Association, et al., Patrick Lynch, as President of the Patrolmens' Benevolent Association, et al., Roy T. Richter, as President of the Captains' Endowment Association, et al., Plaintiffs,

v.

The CITY OF NEW YORK, the New York City Police Department, and Raymond W. Kelly, as Commissioner of the New York City Police Department, Defendants.

Nos. 07 CV 9246(GBD), 07 CV 9337(GBD), 07 CV 10359(GBD).

United States District Court, S.D. New York.

June 28, 2012.

Jane Lauer Barker, Joseph Fredrick Farelli, Vincent Felice Pitta, Barry Neal Saltzman, Vincent Michael Giblin, Pitta & Giblin, L.L.P., David Michael Glanstein, Glanstein LLP, New York, NY, for Plaintiffs.

Alan Maer Schlesinger, Corporation Counsel Office City of New York, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

Plaintiffs, three union organizations representing separately the members of the New York City Police Department ("NYPD") in the ranks of Detective, Sergeant, and Lieutenant (the "Palladino plaintiffs"); Police Officer (the "Lynch plaintiffs"); and Captain (the "Richter plaintiffs"), bring the instant three individual actions challenging NYPD Interim Order ("IO") 52, which requires that a breathalyzer test be administered to any NYPD officer involved in a shooting that results in injury or death to a person in New York City. They challenge IO 52 as an unconstitutional search in violation of the Fourth Amendment. On September 30, 2008, this Court denied plaintiffs' motion for a preliminary injunction against the implementation of IO 52. *See Palladino v. The City of New York*, 07 CV 9246, 2008 WL 4539503 (S.D.N.Y. Sep. 30, 2008). On December 11, 2009, the Second Circuit affirmed this Court's decision to deny plaintiffs' motion for a preliminary injunction. *See Lynch v. City of New York*, 589 F.3d 94 (2d Cir.2009), cert. denied, —— U.S. ——, 131 S.Ct. 415, 178 L.Ed.2d 344 (2010). Having completed discovery, defendants move for summary judgment. The Palladino and Lynch plaintiffs cross-move for summary judgment.[1] Defen-

---

1. The Richter Plaintiffs also move to reopen discovery to depose members of the commit-

dants' motion for summary judgment is GRANTED. The Palladino and Lynch plaintiffs' motion for summary judgment is DENIED.

### Background[2]

Following the tragic shooting of Sean Bell in 2007, the NYPD introduced IO 52, which mandates that "all uniformed members of the service involved in firearms discharges, which result in injury to or death of a person, will be subject to Department administered alcohol testing." *See* IO 52. The stated purpose of IO 52 is "[t]o ensure the highest levels of integrity at the scene of police involved firearms discharges ..." *Id.* Officers are tested using a portable breathalyzer device and may be subjected to further testing based on the results of the breathalyzer test. The results of the test could lead to, in certain cases, "discipline of [an] officer who has been involved in the shooting while under the influence of alcohol" and a "criminal investigation of the shooting." Campisi Dec. Ex. K. ¶¶ 66, 69; *see also* Patrol Guide ("P.G.") 203–04 (mandating that officers "[be] fit for duty at all times ..." and "not consume intoxicants to the extent that member becomes unfit for duty").

In support of their motion for summary judgment, plaintiffs cite various examples of the application of IO 52 since its implementation. In October 2007, Detectives Daniel Rivera, William Gonzalez, and Thomas Murphy discharged their firearms while pursuing a suspect wanted for a double shooting. The Detectives success-fully apprehended the suspect, but Detectives Gonzalez and Rivera suffered non-fatal shot wounds. The three detectives successfully completed the breathalyzer test, and were acknowledged for their outstanding performance. *See* October Palladino Aff. ¶¶ 5–6; Rivera Aff. ¶¶ 3–4.

On July 13, 2008, off-duty Detective Ivan Davidson observed a group of men physically assaulting an individual. One of the attackers fired several shots at Detective Davidson, fortunately missing each time. Detective Davidson returned fire, and the group fled. The victim of the assault survived. Detective Davidson—who at the time suffered from high blood pressure—was taken to a hospital for treatment immediately following the shooting. At the hospital, he breathalyzed a .09 and, following IO 52 protocol, was subjected to further alcohol testing. The NYPD investigated the circumstances surrounding the shooting, and obtained warrants to search Detective Davidson's car and obtain blood samples. Detective Davidson's status was changed to suspended, and then later to modified duty. By July 16, 2008, Detective Davidson was fully reinstated. He was never prosecuted. He was ultimately commended for his actions.

Plaintiffs contend that IO 52 is an unconstitutional intrusion on the privacy of NYPD Officers for the purpose of collecting evidence for use in potential criminal proceedings. Plaintiffs also contend that IO 52 is unconstitutionally vague. Defendants contend that IO 52 is constitutional

---

tee responsible for the development and implementation of IO 52. Here, reopening discovery would be untimely and futile. The three above-captioned cases were consolidated for discovery over three years ago. Magistrate Judge Michael H. Dolinger ordered a discovery period lasting from March 23, 2011 through September 15, 2011. During this period, plaintiffs had ample time to depose members of the committee that recommended

implementing IO 52. Moreover, there is nothing to suggest that further depositions would lead to any new material or relevant evidence concerning the purpose of IO 52. Accordingly, the Richter Plaintiffs motion to reopen discovery is denied.

2. For a more detailed recitation of the facts, see *Palladino v. City of New York*, 2008 WL 4539503 (S.D.N.Y.2007).

under the special needs doctrine of the Fourth Amendment.

## Standard of Review

Summary judgment is appropriate where the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir.2008). The burden rests upon the moving party to show that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" only where it will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For there to be a "genuine" issue about the fact, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the Court is required to resolve all ambiguities and draw all inferences in favor of the non-moving party. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir.2004). Where there is no evidence in the record "from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is appropriate. *Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir.1996).

## The Special Needs Doctrine

■ "The Fourth Amendment requires that searches and seizures be reasonable." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Id.* (citing *Chandler v. Miller*, 520 U.S. 305, 308, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997)). The Supreme Court has recognized limited exceptions to the general prohibition against suspicionless searches. *Id.* Where a search is conducted without individualized suspicion, the Fourth Amendment requires the court to inquire whether the suspicionless search falls under the "special needs" doctrine, which permits "certain regimes of suspicionless searches ... designed to serve special needs, beyond the normal need for law enforcement." *See id.* (internal quotation marks omitted). The Supreme Court has upheld a number of suspicionless searches under this doctrine. *See, e.g., Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (upholding random drug testing of student-athletes); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (upholding sobriety checkpoint designed to remove intoxicated drivers from the road); *Treasury Employees v. Von Raab*, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (upholding drug and alcohol tests for railway employees involved in train accidents); *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601(1987) (upholding warrantless administrative inspection of premises of "closely regulated" business); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (upholding roadblock for purpose of checking motorists' licenses and vehicle registrations); *Michigan v. Tyler*, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) (upholding warrantless administrative inspection of fire-damaged premises to determine cause of blaze); *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (upholding suspicionless seizures of motorists at border checkpoints for purpose of intercepting illegal aliens); *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (uphold-

ing warranties administrative inspection to ensure compliance with housing code).

■■ To qualify for treatment under the special needs doctrine, the search regime must have a "primary purpose [that] is not a general interest in crime control." *Lynch*, 589 F.3d at 100 (internal citations omitted). The Second Circuit has recognized that "the 'special needs' doctrine applies to any program of searches whose 'primary purpose' is a government interest other than crime control ... and the mere fact that crime control is *one* purpose—but not the *primary* purpose—of a program of searches does not bar the application of the special needs doctrine." *Id.* at 102.

■ If the primary purpose qualifies as a special need and not a general interest in crime control, the court must apply a balancing test to determine the reasonableness of the search. *United States v. Amerson*, 483 F.3d 73, 83 (2d Cir.2007). Reasonableness is determined by balancing three factors: " '(1) the nature of the privacy interest involved; (2) the character and degree of the governmental intrusion; and (3) the nature and immediacy of the government's needs, and the efficacy of its policy in addressing those needs.' " *Id.* (quoting *Cassidy v. Chertoff*, 471 F.3d 67, 75 (2d Cir.2006)).

■ Defendant has set forth sufficient evidence demonstrating that the primary purpose of IO 52 is personnel management—specifically, to deter police officers from becoming intoxicated and discharging their weapons. Armed police officers are given awesome power. The NYPD has a substantial and practical interest in ensuring that its officers, especially its armed officers, are fit for duty. Personnel regulations prohibit officers, whether on or off duty, from becoming intoxicated while carrying a weapon. Patrol regulations require "that firearms be removed from any member of the service that is intoxicated, either on or off duty." *See* Campisi Dec.

at 6. IO 52 provides the NYPD with the ability to quickly identify officers who abuse alcohol and discharge their firearms. As a result, IO 52 deters officers from consuming alcohol "to the extent that [they] become[ ] unfit for duty." *See id.* at 2. IO 52 also supplements other procedures already in place to investigate the underlying circumstances of each shooting involving NYPD officers. Also, the immediate confirmation that alcohol is not involved fosters public confidence and eliminates speculation of wrongdoing. As a result, IO 52 serves the NYPD interest in personnel management and promotes public confidence in the NYPD by ensuring that its officers are fit for duty.

Plaintiffs contend the primary purpose of IO 52 is crime control. Plaintiffs point to various instances following IO 52's implementation in which officers were subjected to breathalyzer testing following shootings. But this evidence does not demonstrate that crime control is the focal point of IO 52. IO 52 may indeed facilitate evidence gathering in a criminal investigation of a police officer, but this function merely supplements its main purpose of deterring officers from becoming intoxicated while on duty. Notably, plaintiffs do not submit any evidence of criminal prosecutions of NYPD officers who have taken IO 52 breathalyzer tests. IO 52 was not implemented solely, or primarily, for the purpose of crime control.

■ Moving to the Second Circuit's special needs balancing test, IO 52 withstands Fourth Amendment scrutiny. Applying the first prong, which focuses on the "nature of the privacy interest involved," it is clear on the record evidence that NYPD officers carrying and discharging firearms have diminished expectations of privacy. *Cassidy*, 471 F.3d at 75. "[I]t is plain that certain forms of public employment may diminish privacy expectations ..." *Von*

*Raab*, 489 U.S. at 671, 109 S.Ct. 1384. NYPD officers are tasked with great public responsibility and power. NYPD officers are subject to considerable scrutiny and regulation that might be unreasonable in other workplaces. As the Second Circuit explained in *Lynch*,

> An NYPD officer is subject to drug or alcohol tests at many different times in his or her career, including when an officer first enters service in the NYPD as a probationary police officer and again at the end of the officer's probationary period; when an officer applies for specialty assignments, such as an assignment to the NYPD's Organized Crime Control Bureau; when there is a reasonable suspicion that an officer has ingested a controlled substance; and when an officer has been placed on disciplinary probation because he or she caused injury by driving a motor vehicle while intoxicated. NYPD officers are also subject to random drug tests throughout their service in the NYPD.

589 F.3d at 103 n. 3. NYPD officers are also subject to thorough investigations following every firearm discharge. The NYPD prepares detailed reports for each shooting to determine whether the shooting was within police guidelines and, depending on the circumstances, whether a criminal investigation may be necessary. NYPD officers have a lesser expectation of privacy in relation to their performance of their duties and responsibilities.

The next step in the balancing test is to weigh the "character and degree of the governmental intrusion." *Cassidy*, 471 F.3d at 75. The record evidence demonstrates that the breathalyzer test does not "carry the grave potential for 'arbitrary and oppressive interference with the privacy and personal security of individuals' that the Fourth Amendment was designed to prevent." *Von Raab*, 489 U.S. at 672 n. 2, 109 S.Ct. 1384 (quoting *Martinez–Fuerte*, 428 U.S. at 554, 96 S.Ct. 3074).

NYPD officers are already subject to thorough investigations into each firearm discharge. Given this context, the breathalyzer test—which lasts only a matter of minutes—is not an overly intrusive search. Moreover, it is applied uniformly "in every situation in which an NYPD officer causes injury by firing his or her gun." *Lynch*, 589 F.3d at 104. It is not a significant intrusion; it is another routine step of NYPD post-shooting protocol.

Plaintiffs argue that the breathalyzer test is unreasonable in light of the emotional trauma NYPD officers might experience after discharging their weapons. NYPD officers are without question a category of the bravest and finest public servants, and often must face the consequences of difficult and even potentially life-threatening situations. But the breathalyzer test—even with its immediate post-shooting application—is not an unreasonably traumatic intrusion when viewed in the context of the thorough post-shooting investigation protocol already in place. Officers understand that there will be an administrative investigation into each instance in which they must discharge their firearms. Officers also understand that they will be subject to a five minute breathalyzer test every time they discharge their weapons and someone is injured as a result. It is a brief, mandatory process. The breathalyzer test is uniformly conducted and is neither arbitrary nor oppressive. The test is conducted immediately to quickly lift the cloud of any suspicion that an officer has acted improperly.

The final balancing factor of the special needs test requires the Court to consider "the nature and immediacy of the government's needs" and "the efficacy of its policy in addressing those needs." *Cassidy*, 471 F.3d at 75. As the Second Circuit articulated *Lynch*, "the NYPD's regulations involving alcohol and firearms are

vital to public safety, and the NYPD has a substantial interest in detecting and disciplining officers who violate these policies . . . [and] in deterring its officers from using their firearms while intoxicated." 589 F.3d at 104. The NYPD has a very practical and important interest in managing its personnel and ensuring that officers comply with the Patrolman's Guide regulations concerning officer fitness for duty.[3] Officers are prohibited from possessing a firearm if they are overly intoxicated. The breathalyzer test deters officers from violating this important rule, and serves to identify those officers who do discharge their weapons while under the influence of alcohol. Accordingly, IO 52 is narrowly tailored to accomplish the NYPD's goals of ensuring compliance with its policies regarding personnel management. *See id.* ("By quickly and unequivocally determining whether alcohol was involved in an NYPD officer's use of his or her firearm, the breathalyzer policy will assist the NYPD in disciplining officers who use their firearms while intoxicated and will provide an incentive to officers to stow their firearms before drinking alcohol").

Based on the record evidence, the special needs advanced by defendants outweigh the privacy interests asserted by plaintiffs. *See id.* (quoting *Amerson*, 483 F.3d at 83). IO 52 provides for a reasonable search under the Fourth Amendment.

### Vagueness

 Plaintiffs also contend that IO 52 should be voided because it is unconstitutionally vague. "[T]he void-for-vagueness doctrine requires that laws be crafted with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to

provide explicit standards for those who apply them." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir.2007). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 186 (2d Cir.2010). The degree of scrutiny into vagueness depends on the type of rule at issue. "[E]conomic regulations are subject to a relaxed vagueness test; laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all. When a statute is capable of reaching expression sheltered by the First Amendment, the vagueness doctrine demands a greater degree of specificity than in other contexts." *Id.* (internal citation, footnote, and quotation marks omitted).

 IO 52 is not unconstitutionally vague. IO 52 applies to any "firearms discharge which results in injury to or death of a person, on or off duty, within New York City." *See* IO 52. The language of IO 52 is narrow and precise, describing the exact procedure to be employed by the NYPD following each shooting incident in which someone is injured. *See id.* (listing steps NYPD must follow if conditions of IO 52 are met). Moreover, IO 52 is uniformly applied when the clearly articulated conditions of its implementation are met. As such, IO 52 is not void for vagueness.

### Conclusion

Defendant's motion for summary judgment is GRANTED. The Palladino and

---

**3.** Plaintiffs argue that defendant fails to justify IO 52 with evidence of an alcohol problem in the NYPD based on statistics that 37 NYPD officers were arrested for driving while intoxicated between 2005 and 2007. Because the main purpose of IO 52 is personnel management, this Court need not consider whether there is a strong enough pattern of alcohol abuse in the NYPD to justify the breathalyzer test on that basis alone.

Lynch plaintiffs' cross motion for summary judgment is DENIED.

SO ORDERED